**In re Timothy M. TROGDON, Debtor.**

**UNITED STATES of America, Plaintiff,**

v.

**Timothy M. TROGDON, Defendant.**

**Adv. No. B89–0125.**
**Bankruptcy No. B89–00251.**

United States Bankruptcy Court,
N.D. Ohio, E.D.

March 16, 1990.

Arthur I. Harris, Asst. U.S. Atty., Cleveland, Ohio, for plaintiff.

Waldemar J. Wojcik, Cleveland, Ohio, for defendant.

## MEMORANDUM OF OPINION AND DECISION

WILLIAM J. O'NEILL, Bankruptcy Judge.

Before the Court is the complaint of the United States of America objecting to the discharge of Timothy M. Trogdon under Sections 727(a)(3) and 727(a)(5) of the United States Bankruptcy Code. Defendant–Debtor filed his answer thereto. Additional counts disputing dischargeability and objecting to discharge were previously withdrawn.

The parties stipulated as follows:

"1. Jurisdiction over this proceeding is based upon 28 U.S.C. §§ 1334 and 157. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I)–(J).

2. The Debtor was provided a total of $22,079.50 by the Defense Logistics Agency for his job-related move from his previous duty station in Kansas to his new duty station in Ohio. This amount was paid in addition to his normal salary.

3. Debtor's accountings for the move filed with the Agency claimed a total of $16,470.30 in actual expenses associated with the move.

4. The Agency only disallowed $1,710.00 of the total amount claimed by the Debtor. Thus, $14,760.30 was reported as actual allowable expenses which the Government should reimburse.

5. An accurate summary of the transactions involved is attached as Exhibit 1. The parties stipulate to the admissibility of this exhibit.

6. The overpayment was not the result of any fraud or misrepresentation on the part of the Debtor.

7. Written demand for repayment was made prior to the filing for bankruptcy.

8. The Debtor has remained employed by the Defense Logistics Agency during this bankruptcy and is so employed now. He is a GS–9, Step 2, earning $24,641 per year.

9. Deposition Exhibit 5 is a true copy of Debtor's petition in bankruptcy, statement of financial affairs, and schedule of assets and liabilities. The parties stipulate to the admissibility of this exhibit.

10. Deposition Exhibits 3 and 4 are true copies of all of the checking account statements and cancelled checks produced by the Debtor in response to the deposition subpoena served on the Debtor by the Unit-

ed States. The parties stipulate to the admissibility of this exhibit.

11. Debtor is unable to produce any check registers responsive to the deposition subpoena.

12. At the time the Debtor filed his Chapter 7 petition, he was current on all debts for which creditors held security."

The Court adopts the parties' stipulations and, upon consideration of the evidence presented at the trial of this cause, finds as follows:

Debtor, a quality assurance specialist, employed by the Defense Department, made a job related move from Kansas to Ohio in May of 1988. The Defense Logistics Agency has a program which compensates for such moves. Payment is in the form of travel advances and reimbursement upon submission of vouchers by the employee. (TRANS. 14, 16, 55). Debtor submitted vouchers for a total of $16,-470.30 in actual moving expenses. (STIP. 3). The Agency disallowed $1,710.00 of this amount and thus authorized total payments to Debtor totaling $14,760.30. (STIP. 4). Debtor, however, received total payments of $22,079.50 and thus received overpayment of $7,319.20. (STIP. 2, 5, 6). The major part of the overpayment was received on September 27, 1988 in checks amounting to $5,880.04. (TRANS. 19, 30). The remainder of the overpayment is attributable to mistaken reimbursement for the disallowed expenses. (EXH. 1). Debtor was unaware of overpayment until contacted by the Agency regarding repayment on December 20, 1988. (TRANS. 22, 56, 57, EXH. A, B).

The primary basis for the Government's complaint is the Debtor's inability to produce records or to satisfactorily explain disposition of the overpayment prior to filing his petition under Chapter 7 of the Bankruptcy Code on January 20, 1989. The Bankruptcy case was filed to discharge the overpayment obligation. (TRANS. 24). Debtor's petition and schedules reflect three secured creditors consisting of a home mortgage and two car loans. The government debt for overpayment is the only scheduled unsecured debt. (TRANS. 23–24, EXH. 5).

Defendant is thirty-one years old, married with two children and holds a Bachelor of Arts degree. (TRANS. 13–14). His annual take home pay at the time in issue was approximately $17,400.00. (TRANS. 63, 99). Managing the family finances and its sole bank account was his responsibility. (TRANS. 35, 50). By his own admission he did a less than adequate job of maintaining his records. (TRANS. 35). He failed to regularly maintain a check register. Moreover, he did not retain check registers. They were discarded each time a new box of checks was required. (TRANS. 36, 37). Testimony that his wife mistakenly disposed of the check register for the relevant period prior to his filing bankruptcy was not credible in light of previous testimony that it was not his practice to retain the registers. (TRANS. 35–36, 81–82). Further, he did not retain checks once they were cleared on his bank statement. (TRANS. 66). There is no evidence that this absence of records resulted from Debtor's interstate move.

Debtor deposited the $5,880.04 overpayment in his checking account on September 27, 1988. This was his sole account opened on the move to Ohio. (TRANS. 39, 82–83). An initial $4,100.00 deposit to this account represented a portion of his savings of approximately $6,000.00. (TRANS. 44, 82–83). In response to various discovery requests and at trial, Debtor failed to produce any checks for purchases dated prior to October 3, 1988. (TRANS. 27–29, 68, EXH. 3, 4). He produced no bank statements for any period prior to October 24, 1988. (TRANS. 66, EXH. 3). Bank records of Debtor's account were presented in summary form. (EXH. 6, 7). The payee on a number of these entries is unknown due to illegibility of the bank's records. (TRANS. 12).

Bank records reflect deposit of the $5,880.04 overpayment on September 27, 1988. (EXH. 6). Within the succeeding eight days, in excess of $2,000.00 cash was withdrawn. (TRANS. 24–25, EXH. 6). By October 20, 1988 virtually the entire over-

payment was spent including $3,000.00 cash withdrawals. (EXH. 6). In addition, bank records indicate an excess of $450.00 in expenditures for which there is no record of a payee in this period. (EXH. 3, 4, 7). Debtor produced checks accounting for only $1,450.00 of the overpayment. (EXH. 3, 4, 7). He produced no other checks, no receipts and no check register for these transactions. (TRANS. 27, EXH. 3, 4).

Debtor's memory of these transactions is nebulous. He estimated $3,000.00 was spent for home repairs. Numerous major expenditures were cited to explain disposition of this money including chess tournaments and equipment, student and appliance loan payoffs and hospital bills and eyeglasses. In addition, Debtor stated he made substantial stamp purchases for a friend in New York totaling $1,500.00 in 1988. (TRANS. 70–88). While these explanations were plausible, they were clearly conjecture. When questioned, he was uncertain of the amount of his monthly mortgage payment. (TRANS. 34–35). His recollection of specific substantial purchases proved to be incorrect. (TRANS. 92–93). Numerous large expenditures could not be explained. (TRANS. 24–34, 37–39). Explanations conflicted with his bankruptcy petition and Statement of Financial Affairs. His Statement, for example, reflected repayment of one student loan in September of 1988 and payment for appliances totaling $800.00. (EXH. 5). Testimony at trial revealed payment of only one student loan and appliance loan payments of "around $600.00". (TRANS. 77).

In addition to the absence of records explaining Debtor's financial transactions concerning the $7,319.20 overpayment, no checks or check registers were produced concerning disposition of his substantial $6,000.00 savings subsequent to his moving. While there are bank records to provide insight into those transactions, in their absence Debtor has no records of such transactions.

The Government asserts Debtor's failure to keep records from which expenditure of the overpayment might be ascertained and his failure to satisfactorily explain its disposition are grounds for denial of discharge under Sections 727(a)(3) and (a)(5) of the United States Bankruptcy Code. 11 U.S.C. §§ 727(a)(3); (a)(5). Plaintiff has the burden to prove its objection to discharge. Bankr.R. 4005.

■  A.  Section 727(a)(3) provides for denial of discharge if—

> "the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case ..." 11 U.S.C. § 727(a)(3)

The purpose of this provision is to ensure that the trustee and creditors receive sufficient information to trace a debtor's financial history for a reasonable period past to present. *Chicago Title Insurance Co. v. Mart*, 87 B.R. 206 (Bankr.S.D.Fla.1988); *Forstall v. McCall*, 76 B.R. 490 (Bankr.E. D.Pa.1987). This subsection makes "the privilege of discharge dependent on a true presentation of the debtor's financial affairs. It was never intended that a bankrupt, after failure, should be excused from his indebtedness without showing an honest effort to reflect his entire business and not a part merely." *In re Underhill*, 82 F.2d 258, 260 (2d Cir.1936).

■  The adequacy of debtor's records must be determined on a case by case basis. Considerations to make this determination include debtor's occupation, financial structure, education, experience, sophistication and any other circumstances that should be considered in the interest of justice. *Mart*; *Seidle v. Escobar*, 53 B.R. 382 (Bankr.S.D.Fla.1985). Once a debtor's records are determined to be inadequate, the burden is on the debtor to establish any justification therefor. *Calisoff v. Calisoff*, 92 B.R. 346 (Bankr.N.D.Ill.1988).

■  The focus in the within cause is the Debtor's failure to keep financial records; specifically, records to substantiate disposi-

tion of the $7,319.20 overpayment received on September 27, 1988. Lack of funds to repay this amount precipitated the bankruptcy, and Section 727(a)(3) requires recorded information of the fund's disposition. Debtor cites illegibility of bank records for his inability to explain the transactions. Section 727(a)(3), however, focuses on debtor's financial records, and under the circumstances herein, his were inadequate. He failed to maintain records by which expenditure of the overpayment and thus his financial condition and transactions could be ascertained. Were it not for the bank records, Debtor could provide nothing more than vague generalizations of his disposing of $4,500.00, an amount equalling one-quarter of his annual salary, in a span of less than one month. Further, the bank records raise as many questions as they answer, questions concerning substantial checks and cash withdrawals which Debtor is unable to answer.

Debtor is intelligent and college educated. While his financial dealings are fairly simple and uncomplicated, his records were inadequate under the circumstances. The absence of checks, check registers or receipts to substantiate major payments on items including payoff of student loans and appliance loans, frustrates any attempt to determine Debtor's financial history and transactions. In addition, there is no record of Debtor's sizeable purchases of stamps on behalf of his friend or his reimbursement therefor. Business transactions of this nature require recordation of some type as a requisite to obtaining discharge. Therefore, it is clear that under the circumstances, Debtor failed to keep recorded information, records or papers from which his financial condition or business transactions might be ascertained. Debtor provided no justification for his failure to keep records. His discharge is, therefore, precluded by Section 727(a)(3).

■ B. Closely aligned to the allegation of Debtor's failure to keep records is the assertion that discharge should be denied under Section 727(a)(5). This Section precludes discharge when:

"the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities ..." 11 U.S.C. § 727(a)(5)

"Vague and indefinite explanations of losses that are based upon estimates, uncorroborated by documentation are unsatisfactory." *Chalik v. Moorefield,* 748 F.2d 616 (11th Cir.1984). The word satisfactory "may mean reasonable, or it may mean that the Court, after having heard the excuse, the explanation, has that mental attitude which finds contentment in saying that he believes the explanation—he believes what the bankrupts say with reference to the disappearance or shortage. He is satisfied. He no longer wonders. He is contented." *First Texas Savings Association, Inc. v. Reed,* 700 F.2d 986, 993 (5th Cir.1983) citing *In re Shapiro and Ornish,* 37 F.2d 403, 406 (D.C.N.D.Tex.1929). The creditor's burden of persuasion does not obviate the necessity that the debtor provide a satisfactory explanation of the loss of assets. *Reed.*

■ As with the previous objection, the Government concentrates on Debtor's disposition of the overpayment. This payment approximates one-third of his annual salary. Explanations of his expenditure of this money are undeniably vague and indefinite. They are also admittedly estimates for which Debtor had no corroborating documentation. Debtor's explanations produced only discontentment and were unsatisfactory for purposes of Section 727(a)(5).

## CONCLUSION

Defendant's discharge is appropriately denied pursuant to Section 727(a)(3) and Section 727(a)(5) of the United States Bankruptcy Code.