**In re George D. CUTLER, Debtor.**

**Michael A. Stevenson, Trustee, Plaintiff,**

**v.**

**George D. Cutler, Defendant.**

**Bankruptcy No. 01–63298–R.**
**Adversary No. 02–4742.**

United States Bankruptcy Court, E.D. Michigan, Southern Division.

April 22, 2003.

Donald J. Hutchinson, Detroit, MI, Craig S. Schoenherr, Sr., Sterling Hts., MI, for creditor.

Charles J. Schneider, Livonia, MI, for debtor.

*Opinion*

STEVEN W. RHODES, Chief Judge.

Following trial, the Court concluded that the debtor's discharge must be denied pursuant to 11 U.S.C. § 727. This opinion supplements the opinion given in open court.

### I.

On November 30, 2001, George Cutler filed a chapter 7 bankruptcy petition. Michael Stevenson was appointed the chapter 7 trustee. Cutler is the president and sole owner of Professional Engineers & Designers, a building renovation corporation. Professional Engineers & Designers did not file bankruptcy. The debtor's son, Gerald Cutler, is the president and sole owner of Professional Designers & Developers, LLC, a company that provided labor to Professional Engineers & Designers. George Cutler is also the pastor, incorporator, and resident agent of Grace Gospel Church, an ecclesiastical corporation organized under the laws of Michigan.

On May 7, 2001, before filing his chapter 7 petition, Cutler and his wife refinanced their home. In the course of refinancing, Cutler and his wife gave a mortgage on their home to BNC Mortgage Inc. in the amount of $324,000. After paying closing costs and the prior mortgage of $149,328.47, the loan proceeds were distributed as follows: $100,000 to Hicks Construction Co. for a debt owed by Professional Engineers & Designers; $27,589.37 to Professional Designers & Developers, Inc. for a debt owed by Professional Engineers & Designers; and $2,000 to Rose Cutler, the debtor's wife.

Cutler stipulated that he did not have any contractual liability to either Hicks Construction Co. or Professional Designers & Developers. These transfers were not disclosed in the petition or schedules. Eventually, on January 22, 2003 and February 18, 2003, Cutler filed amendments attempting to disclose these transfers. However, the first amendment incorrectly identified a transfer to Professional Engineers & Designers rather than to Professional Designers & Developers, and also incorrectly stated the date of the transfer as May 7, 2003. The second amendment corrected the transferee as Professional Designers & Developers but continued to incorrectly state the date of the transfer to Professional Designers & Developers as May 7, 2003.

There were additional inaccuracies on the bankruptcy petition and schedules. The petition stated grossly inaccurate estimates of the number of creditors, amount of assets and amount of debt. The petition also classified the debt as primarily consumer/nonbusiness, when clearly the vast majority of debts listed in schedule F were business debts. Additionally, schedule I stated that Cutler was "unemployed," although he holds the position of pastor at Grace Gospel Church. The church bylaws entitle him to "compensation as approved by the executive board." Cutler and his former attorney, Charles Schneider, both testified that Grace Gospel Church paid Cutler's bankruptcy expenses as a form of compensation. Grace Gospel Church also made several of the lease payments on Cutler's 2001 Cadillac automobile.

Additionally, due to Cutler's neglect, business records from Professional Engineers & Designers that were stored at Your Personal Vault storage facility were destroyed prior to the bankruptcy. Your Personal Vault sent Cutler a notice that the contents of the storage unit would be sold if past due payments were not remitted. Cutler did not pay the past due amount and the contents were sold and ultimately destroyed.

Based on these facts, the trustee brought this action to deny the debtor's discharge under several subsections of 11 U.S.C. § 727.

## II.

The first section relied upon by the trustee, § 727(a)(2)(A), provides:

> (a) The court shall grant the debtor a discharge, unless—
>
> . . .
>
> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be, transferred, removed, destroyed, mutilated, or concealed—
>
> (A) property of the debtor, within one year before the date of the filing of the petition[.]

11 U.S.C. § 727(a)(2)(A).

"This section encompasses two elements: 1) a disposition of property, such as concealment, and 2) 'a subjective intent

on the debtor's part to hinder, delay or defraud a creditor through the act disposing of the property.'" *Keeney v. Smith (In re Keeney)*, 227 F.3d 679 (6th Cir.2000) (quoting *Hughes v. Lawson (In re Lawson)*, 122 F.3d 1237, 1240 (9th Cir.1997)).

■ The trustee asserts that two transfers of the debtor's property within the year prior to filing require that the debtor's discharge be denied. The debtor paid $100,000 to Hicks Construction Co. and $27,589.37 to Professional Designers & Developers. Both transfers occurred when Cutler refinanced his home. While not denying that these transfers occurred, Cutler asserts that they were not done with fraudulent intent.

Intent to defraud can be inferred when the following "badges of fraud" are present:

1. The lack or inadequacy of consideration;

2. A family, friendship, or other close associate relationship between the parties;

3. The retention of possession, benefit, or use of the property in question;

4. The financial condition of the party sought to be charged both before and after the transaction in question;

5. The existence or cumulative effect of a pattern or series of transactions or course of conduct after incurring of debt, onset of financial difficulties, or pendency or threat of suit by creditors; and

6. The general chronology of events and transaction.

*HSBC Bank U.S.A. v. Handel (In re Handel)*, 266 B.R. 585, 589 (Bankr.S.D.N.Y. 2001).

■ Several badges of fraud are present in this case, leading the Court to conclude that Cutler had the requisite intent to hinder, delay or defraud his creditors.

First, both transfers were gratuitous. Cutler admitted that he had no obligation to either Hicks Construction Co. or Professional Designers & Developers. Moreover, he received no benefit from the transfers.

Second, Professional Designers & Developers is solely owned by Cutler's son.

Third, the transfers left Cutler with no equity in his home and virtually no other assets.

Fourth, the transfer occurred just six months prior to the debtor's bankruptcy.

Finally, Cutler did not disclose the transfers in his petition or schedules. The transfers were discovered by the trustee and addressed during a 2004 examination of the debtor. The debtor did not amend his petition and schedules until 7 months later.

The Court concludes that the elements of § 727(a)(2)(a) are met with regard to the transfers to Hicks Construction Co. and Professional Designers & Developers. Accordingly, the debtor's discharge is denied on those grounds.

### III.

The trustee asserts that the debtor's discharge should also be denied pursuant to § 727(a)(3) which provides:

(a) The court shall grant the debtor a discharge, unless-

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to

act was justified under all of the circumstances of the case[.]

11 U.S.C. § 727(a)(3).

 A debtor may be denied a discharge for failure to keep adequate financial records, regardless of a lack of intent to conceal financial information from creditors. *American Motors Leasing Corp. v. Morando (In re Morando)*, 116 B.R. 14 (Bankr.D.Mass.1990); *Reynolds v. Miller (In re Miller)*, 97 B.R. 760, 763 (Bankr. W.D.N.Y.1989). "The party seeking denial of a discharge has the burden of proving the inadequacy of the debtor's records." *Turoczy Bonding Co. v. Strbac (In re Strbac)*, 235 B.R. 880, 882 (6th Cir. BAP 1999) (citation omitted).

In order to prevail on a section 727(a)(3) action, the creditor must establish: (1) that the debtor failed to keep or preserve books or records; and (2) that such failure makes it impossible to ascertain the debtor's financial condition and material business transactions. *See Beneficial Mortgage Co. v. Craig (In re Craig)*, 140 B.R. 454, 458 (Bankr. N.D.Ohio 1992). The adequacy of the debtor's records must be established on a case by case basis. *See id.; United States v. Trogdon (In re Trogdon)*, 111 B.R. 655, 658 (Bankr.N.D.Ohio 1990). "Considerations to make this determination include debtor's occupation, financial structure, education, experience, sophistication and any other circumstances that should be considered in the interest of justice." *In re Trogdon*, 111 B.R. at 658. *Accord Chicago Title Ins. Co. Inc. v. Mart (In re Mart)*, 87 B.R. 206, 210 (Bankr.S.D.Fla.1988).

*Pher Partners v. Womble (In re Womble)*, 289 B.R. 836, 856 (Bankr.N.D.Tex.2003).

The Bankruptcy Code does not require a debtor seeking a discharge specifically to maintain a bank account, nor does it require an impeccable system of bookkeeping. Nevertheless, the records must " 'sufficiently identify the transactions [so] that intelligent inquiry can be made of them.' The test is whether 'there [is] available written evidence made and preserved from which the present financial condition of the bankrupt, and his business transactions for a reasonable period in the past may be ascertained.' " *In re Decker*, 595 F.2d 185, 187 (3d Cir.1979) (citations omitted). Thus, in order to invoke the protection of the bankruptcy court, the debtor must maintain and preserve adequate records. If the debtor fails to do so, there must be some justification.

It was never intended that a bankrupt, after failure, should be excused from his indebtedness without showing an honest effort to reflect his entire business and not a part merely. To be sure, there may be records which are not books; but it is intended that there be available written evidence made and preserved from which the present financial condition of the bankrupt, and his business transactions for a reasonable period in the past may be ascertained.

*Meridian Bank v. Alten*, 958 F.2d 1226, 1230–31 (3d Cir.1992) (citations omitted).

The issue of justification depends largely on what a normal, reasonable person would do under similar circumstances. The inquiry should include the education, experience, and sophistication of the debtor; the volume of the debtor's business; the complexity of the debtor's business; the amount of credit extended to debtor in his business; and any other circumstances that should be considered in the interest of justice.

*Alten*, 958 F.2d at 1231.

 The trustee argues that Cutler's failure to pay the fees at Your Vault Personal Storage caused the records to be

destroyed, constituting grounds to deny the discharge. Cutler admitted that he received notice that if he did not pay the storage fees by a certain date that the items would be sold. He testified that he did not pay the fee because he thought the records would be worthless and therefore, would not be sold. When he went to pick up the records several weeks after the deadline he was informed that they had been sold and ultimately destroyed.

Cutler asserts that he produced sufficient records by providing copies of documents which were attached to pleadings in various court cases as well as records that were kept in his home rather than the storage facility. The trustee asserts that specific documents, such as the minute book, bylaws, and articles, documentation of accounts receivable and payable, were not produced. Cutler's rebuttal is that those documents never existed.

The Court concludes that the trustee has not carried his burden of proving that it is impossible to ascertain the debtor's financial condition and material business transactions due to the destruction of the records kept at the storage facility. Accordingly, the Court overrules the trustee's objection to the discharge under § 727(a)(3).

### IV.

The trustee also asserts additional grounds for denial of the discharge based upon § 727(a)(4), which provides:

> (a) The court shall grant the debtor a discharge, unless-
>
> . . .
>
> (4) the debtor knowingly and fraudulently, in or in connection with the case-

> (A) made a false oath or account[.]

11 U.S.C. § 727(a)(4).

In order to deny a debtor discharge under this section, a plaintiff must prove by a preponderance of the evidence that: 1) the debtor made a statement under oath; 2) the statement was false; 3) the debtor knew the statement was false; 4) the debtor made the statement with fraudulent intent; and 5) the statement related materially to the bankruptcy case. *See Beaubouef v. Beaubouef (In re Beaubouef)*, 966 F.2d 174, 178 (5th Cir.1992). Whether a debtor has made a false oath under section 727(a)(4)(A) is a question of fact.

*Keeney*, 227 F.3d at 685.

Under this section, an omission alone from the debtor's statement of affairs or schedules is grounds for denying a discharge. If a debtor fails to fully provide information that is required, the debtor will be denied a discharge under § 727(a)(4). *See In re Sicari*, 187 B.R. at 879. Of course, a debtor may, at times, make a misstatement and prove that the misstatement caused minimal harm to the estate. However, "the determination of relevance and importance of the question is not for the debtor to make." *Nisselson v. Wolfson (In re Wolfson)*, 139 B.R. 279, 287 (Bankr. S.D.N.Y.1992) (*quoting Guardian Indus. Prods., Inc. v. Diodati (In re Diodati)*, 9 B.R. 804, 808 (Bankr.D.Mass. 1981)).

*HSBC Bank USA v. Handel (In re Handel)*, 266 B.R. 585, 589–90 (Bankr.S.D.N.Y. 2001).

The trustee asserted numerous false statements and omissions in the petition, schedules and statement of financial affairs. In schedule I, the debtor stated that he was "unemployed," even though he holds the position of pastor at Grace Gospel Church. Schedule I also indicates no

income, even though Grace Gospel Church paid the debtor's attorney's fees and other bankruptcy expenses as well as lease payments on the debtor's vehicle as a form of compensation. The Rule 2016(b) statement signed by both the debtor and his attorney indicates that the attorney was paid from the debtor's wages/compensation. The petition grossly underestimates the amount of assets, debt and number of creditors. The petition asserts that the case involves primarily consumer or non-business debt, when the debtor's testimony clearly indicates that most of the debt is related to his business. Additionally, the debtor's testimony leads the Court to believe that many, if not most, of the debts listed in schedule F are not the debtor's personal debts but are corporate debts for which the debtor may not be personally liable. The statement of financial affairs also contained the false statement that there were no transfers within a year prior to filing the bankruptcy petition.

Under this section, a fraudulent statement must be made with a knowing intent to defraud creditors. *Swicegood*, 924 F.2d at 232. Deliberate omissions from the schedules may constitute false oaths and result in the denial of a discharge. *Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 618 (11th Cir. 1984). The plaintiff must demonstrate actual, not constructive, fraud. *Wines v. Wines (In re Wines)*, 997 F.2d 852, 856 (11th Cir.1993). However, since defendants will rarely admit their fraudulent intent, actual intent may be inferred from circumstantial evidence. *Ingersoll v. Kriseman (In re Ingersoll)*, 124 B.R. 116, 123 (M.D.Fla.1991). A series or pattern of errors or omissions may have a cumulative effect giving rise to an inference of an intent to deceive. *Beaubouef v. Beaubouef (In re Beaubouef)*, 966 F.2d 174, 178 (5th Cir.1992). On the other hand, the discharge is not to be

denied when the untruth was the result of a mistake or inadvertence. *Beaubouef*, 966 F.2d at 178.

*Rouse v. Stanke (In re Stanke)*, 234 B.R. 449, 458 (Bankr.W.D.Mo.1999).

■ The numerous false statements in this case give rise to an inference of an intent to deceive. The debtor's attorney admitted to knowing about the transfers and the debtor's position with Grace Gospel Church, and to choosing to leave the information out of the petition and schedules. The Court concludes that the trustee has proven the grounds to deny the discharge pursuant to § 727(a)(4).

### V.

■ In the present case, Cutler and his attorney have admitted that they did not file completely accurate schedules. Mr. Schneider attempts to assert that the directions are confusing and that he did include everything that would assist the trustee in administration of the case. However, it is not the role of the debtor or his attorney to make determinations regarding relevance and importance. *See Nisselson v. Wolfson (In re Wolfson)*, 139 B.R. 279, 287 (Bankr.S.D.N.Y.1992); *Law Offices of Dominic J. Salfi, P.A. v. Prevatt (In re Prevatt)*, 261 B.R. 54, 57 (Bankr. M.D.Fla.2000).

The Sixth Circuit recently stated, "A debtor has an affirmative duty to disclose all of its assets to the bankruptcy court[.]" *Browning v. Levy*, 283 F.3d 761, 775 (6th Cir.2002).

Other courts have stated:

"The debtors have a duty to truthfully answer questions presented in the various schedules and filings carefully, completely and accurately." *In re Famisaran*, 224 B.R. 886, 891 (Bankr.N.D.Ill.1998).

"The debtor is imposed with a paramount duty to carefully consider all questions included in the Schedules and Statement and see that each is answered accurately and completely." *Casey v. Kasal (In re Kasal)*, 217 B.R. 727, 734 (Bankr.E.D.Pa.1998), *aff'd,* 223 B.R. 879 (E.D.Pa.1998).

"The burden is on the debtors to complete their schedules accurately." *Rion v. Spivey (In re Springer)*, 127 B.R. 702, 707 (Bankr.M.D.Fla.1991). *See also Faden v. Ins. Co. of North Am. (In re Faden)*, 96 F.3d 792, 795 (5th Cir.1996).

"Candor, accuracy and integrity are required of a debtor in bankruptcy." *Holder v. Bennett (In re Bennett)*, 126 B.R. 869, 875 (Bankr.N.D.Tex.1991).

"The bankruptcy laws impose a strict obligation on debtors to file complete and accurate schedules." *In re Dubberke,* 119 B.R. 677, 680 (Bankr.S.D.Iowa 1990).

### VI.

■ The reasons for denying a discharge to a bankrupt must be real and substantial, not merely technical and conjectural. A debtor is entitled to a starting presumption that most debtors are honest and do not ordinarily engage in fraudulent activities.

*Schreiber v. Emmerson (In re Emmerson)*, 244 B.R. 1, 19 (Bankr.D.N.H.1999) (internal citations omitted).

In the present case there are real and substantial reasons for denying the debtor's discharge. The bankruptcy petition and schedules contain many false statements and omissions, and fail to disclose transfers. At a minimum, the pattern of false statements and omissions show a gross recklessness for the truth. More likely, they indicate intentional fraud. In either event, the trustee has proven that the debtor's discharge should be denied pursuant to § 727(a)(2)(A) and (a)(4)(A).

The Court will enter an appropriate order.