**In re Stephen Jerome BAILEY, Debtor.**

**CM Temporary Services, Inc., Plaintiff**

v.

**Stephen Jerome Bailey, Defendant.**

**Bankruptcy No. 06–31286.**
**Adversary No. 06–3297.**

United States Bankruptcy Court,
S.D. Ohio,
Western Division,
at Dayton.

Sept. 12, 2007.

Robert A. Goering, Esq., Cincinnati, OH, for Plaintiff.

Stephen Jerome Bailey, Loveland, OH, Debtor/Defendant.

Eileen K. Field, Esq., Cincinnati, OH, for Defendant.

## DECISION GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT PURSUANT TO 11 U.S.C. § 727(a)(3)

THOMAS F. WALDRON, Bankruptcy Judge.

### Background

On September 14, 2006, the Plaintiff, CM Temporary Services, Inc., filed a complaint against the Debtor, Stephen Jerome Bailey (Doc. 1). The complaint in addition to seeking to have a scheduled, disputed debt of $103,944.90 found non-dischargeable pursuant to § 523(a)(2) and (4) also seeks to deny the Debtor's discharge pursuant to § 727(a)(3). On October 13, 2006, the Debtor answered, generally denying the allegations, and asserting that the disputed debt was not the Debtor's individual debt, but a separate corporate debt of Bailey Contracting Services, Inc. ("Bailey Contracting") (Doc. 4). After a series of

pre-trial conferences, the court, in a May 16, 2007 order, set a summary judgment briefing schedule on the § 727(a)(3) count (Doc. 20). On June 25, 2007, the Plaintiff filed its *Motion for Summary Judgment* (Doc. 23). Additionally, on June 24, 2007, the Plaintiff filed a transcript of a portion of the Debtor's deposition (Doc. 22). The parties stipulated to various exhibits (Docs. 24, 26) and facts (Doc. 25). The Debtor filed a response to the summary judgment motion on July 25, 2007 (Doc. 27), as well as an affidavit of the Debtor (Doc. 28).

### Jurisdiction

This court has jurisdiction pursuant to 28 U.S.C. § 1334 and the Standing Order of Reference entered in this District. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(J).

### Agreed Facts

The parties stipulated to the following relevant facts: In July 2005, the Plaintiff sued the Debtor in state court for, among other causes of action, breach of contract and conversion (Doc. 25, ¶ 7). On May 22, 2006, the Debtor filed his bankruptcy petition (Doc. 25, ¶ 1). The Debtor scheduled the claim of the Plaintiff as a disputed debt, in the amount of $103,944.90 (Doc. 25, ¶ 2). Prior to the petition date, the parties through the Debtor's company, Bailey Contracting, were involved in a business relationship in which they jointly provided employment services to an unrelated business, Berman Printing Company (Doc. 25, ¶ 3). Berman Printing Company paid for these services by checks payable to Bailey Contracting (Doc. 25, ¶ 4). Bailey Contracting was responsible for paying the Plaintiff the portion of those funds attributable to work by the Plaintiff. *Id.* The parties agree that all of the funds owed to the Plaintiff were not paid, but dispute the total amount due the Plaintiff (Doc. 25, ¶ 5).

The Debtor paid personal bills out of the company's account and did not have a separate personal account (Doc. 25, ¶ 6). In August 2006, the Plaintiff filed a notice of a Bankruptcy Rule 2004 examination, but the Debtor did not appear at the scheduled examination (Doc. 25, ¶ 8). On September 14, 2006, the Plaintiff filed this adversary proceeding (Doc. 25, ¶ 9). The Plaintiff deposed the Debtor on February 15, 2007, where certain records were produced, but not the complete bank records of Bailey Contracting which the Plaintiff had requested (Doc. 25, ¶ 10). The deposition was rescheduled for April 19, 2007, where the Debtor "indicated he did not have any corporate bank records," but "promised under oath to produce records of business transactions." (Doc. 25, ¶ 10, 11). See also Doc. 22, p. 10 –11.

### Summary Judgment Standard

This court reviewed the summary judgment standard in a recently reported decision:

The familiar standard to address the parties' filings is contained in Federal Rule of Civil Procedure 56(c) and is applicable to bankruptcy adversary proceedings by incorporation in Bankruptcy Rule 7056. Federal Rule of Civil Procedure 56(c) states, in part, that a court must grant summary judgment to the moving party if:

> the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

In order to prevail, the moving party, if bearing the burden of persuasion at trial, must establish all elements of its claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 331, 106 S.Ct. 2548, 2556, 91

L.Ed.2d 265 (1986). If the burden is on the non-moving party at trial, the movant must: 1) submit affirmative evidence that negates an essential element of the nonmoving party's claim; or 2) demonstrate to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim. *Id.* at 331–332, 106 S.Ct. at 2557. Thereafter, the opposing party "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citations omitted); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–251, 106 S.Ct. 2505, 2510–12, 91 L.Ed.2d 202 (1986). All inferences drawn from the underlying facts must be viewed in a light most favorable to the party opposing the motion. *Matsushita*, 475 U.S. at 586–588, 106 S.Ct. at 1356–57.

*Gemini Servs., Inc. v. Mortgage Elec. Registration Sys., Inc (In re Gemini Servs., Inc.)*, 350 B.R. 74, 80–81 (Bankr.S.D.Ohio 2006), *quoting Roberds, Inc. v. Broyhill Furniture (In re Roberds, Inc.)*, 313 B.R. 732, 735 (Bankr.S.D.Ohio 2004).

### Issues Presented

1) Does the Plaintiff, whose debt is scheduled by the Debtor as disputed and has never been fully litigated in any forum, have standing to seek a denial of the Debtor's discharge?

2) Does 11 U.S.C. § 727(a)(3), in the circumstances of this bankruptcy case and related adversary proceeding, require the Debtor to preserve recorded information, specifically business transactions from a bank account involving the parties' funds related to a separate corporation, Bailey Contracting?

3) Within the meaning of 11 U.S.C. § 727(a)(3), was the Debtor's failure to preserve bank records concerning Bailey Contracting justified under all of the circumstances?

### Issues Decided

1) The Plaintiff, whose debt is scheduled by the Debtor as disputed and has never been fully litigated in any forum, has standing to seek a denial of the Debtor's discharge.

2) 11 U.S.C. § 727(a)(3), in the circumstances of this bankruptcy case and related adversary proceeding, does require the Debtor to preserve recorded information, specifically business transactions from a bank account involving the parties' funds related to a separate corporation, Bailey Contracting.

3) Within the meaning of 11 U.S.C. § 727(a)(3), the Debtor's failure to preserve bank records concerning Bailey Contracting was not justified under all of the circumstances.

### The Plaintiff is a "Creditor" and Has Standing Under 11 U.S.C. § 727(a)(3)

The Debtor argues that the Plaintiff lacks standing to prosecute a cause of action under § 727 because the Plaintiff is not a creditor in the Debtor's bankruptcy case. Specifically, the Debtor asserts that the debt in question was scheduled as a disputed debt and was never fully litigated in any forum. Further, the Debtor's position is the debt is solely the obligation of Bailey Contracting, a separate corporate entity, and, in any event, is disputed, and, therefore, the Plaintiff lacks standing to prosecute a § 727 cause of action.

■ Section 727(c)(1) gives a "creditor" the right to object to a debtor's discharge. The definition of "creditor" includes an "entity that has a *claim* against the debtor that arose at the time of or before the order for relief concerning the debtor[.]" 11 U.S.C. § 101(10)(A) (emphasis added). The definition of "claim" is very broad and

includes a "right to payment, *whether or not such right was reduced to judgment,* liquidated, *unliquidated,* fixed, *contingent,* matured, unmatured, *disputed,* undisputed, legal, equitable, secured, or unsecured[.]" 11 U.S.C. § 101(5)(A) (emphasis added). See *Johnson v. Home State Bank,* 501 U.S. 78, 83, 111 S.Ct. 2150, 2154, 115 L.Ed.2d 66 (1991) ("We have previously explained that Congress intended by this language to adopt the broadest available definition of 'claim.' "; citation omitted).

██ Consistent with the plain meaning of the definitions in the Bankruptcy Code, the court determines that the disputed nature of a debt is not a bar to the Plaintiff having standing to pursue a denial of the Debtor's discharge pursuant to § 727 and the Plaintiff is a "creditor" within the meaning of the Bankruptcy Code. Accord *Solomon v. Barman (In re Barman),* 244 B.R. 896, 899 (Bankr.E.D.Mich.2000); *McGrath v. Moreau (In re Moreau),* 161 B.R. 742, 745 (Bankr.D.Conn.1993); *Amer. Motors Leasing Corp. v. Morando (In re Morando),* 116 B.R. 14, 15 (Bankr.D.Mass. 1990). The Debtor also argues that the Plaintiff lacks standing because the debt is solely the obligation of a separate corporate entity, Bailey Contracting. The record establishes that the Plaintiff sued the Debtor individually in state court (Doc. 25, ¶ 7; Exhibit E) and in this court. Additionally, as further explained in this decision, this "corporate" argument is not a bar to the liability of the Debtor's individually. The debt is, as scheduled by the Debtor, simply disputed between the parties and, as noted, a creditor on a disputed debt has standing to prosecute a § 727 cause of action.

### Analysis

### Legal Standard—11 U.S.C. § 727(a)(3)

██ 11 U.S.C. § 727(a)(3) states that "[t]he court shall grant the debtor a discharge, unless ... the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case[.]" As an exception to discharge and consistent with the overriding goal of providing a "fresh start" to honest bankruptcy debtors, the statute is to be liberally construed in favor of the Debtor. *Haynes v. Carter (In re Carter),* 274 B.R. 481, 484 (Bankr.S.D.Ohio 2002) (citations omitted). However, it is also true that a discharge is a privilege, and not a right, and should only benefit an honest debtor. *In re Juzwiak,* 89 F.3d 424, 427 (7th Cir.1996) (citations omitted).

██ Section 727(a)(3) has been interpreted to apply a shifting burden of proof. The Plaintiff must establish a *prima facie* case showing the Debtor failed to keep adequate records. *Grange Mut. Ins. Co. v. Benningfield (In re Benningfield),* 109 B.R. 291, 293 (Bankr.S.D.Ohio 1989). For purposes of § 727(a)(3), the Plaintiff is not entitled to perfect, or even necessarily complete, records. Instead, the Debtor must provide the Plaintiff "with enough information to ascertain the debtor's financial condition and track his financial dealings with substantial completeness and accuracy for a reasonable period past to present." *Turoczy Bonding Co. v. Strbac (In re Strbac),* 235 B.R. 880, 882 (6th Cir. BAP 1999), quoting *Bay State Milling Co. v. Martin (In re Martin),* 141 B.R. 986, 995 (Bankr.N.D.Ill.1992). In determining the adequacy of records, the court can consider the Debtor's education, business experience, sophistication, or any other relevant factor. *Id., citing United States*

*v. Trogdon (In re Trogdon)*, 111 B.R. 655, 658 (Bankr.N.D.Ohio 1990).

 If the Plaintiff has established this *prima facie* case, the burden then shifts to the Debtor to explain why the failure to keep records, under the circumstances of the case, is justified. *Id.* In considering an explanation, the court should consider both the Debtor's credibility and the reasonableness of the explanation, considering the debtor's sophistication and the materiality of the records. *Id.* The requirement for keeping recorded information is not an unqualified one and complete disclosure is not always required, but instead it is a question of reasonableness under the circumstances. *Huntington Nat'l Bank v. Schwartzman (In re Schwartzman)*, 63 B.R. 348, 358 (Bankr. S.D.Ohio 1986). However, if disclosure cannot be made without the keeping of recorded information, the failure to supply the records is relevant to the policy underlying § 727(a)(3). *Id.*

 The ultimate burden of persuasion, of course, rests with the Plaintiff. *Id.* The standard of proof for discharge objections under § 727(a) is by a preponderance of the evidence. *Barclays/American Bus. Credit, Inc. v. Adams (In re Adams)*, 31 F.3d 389, 394 (6th Cir.1994).

## The Debtor Failed to Keep or Preserve Crucial Bank Records Directly Relevant to the Plaintiff's § 523 Causes of Action

 The records at issue in this adversary proceeding are not complicated to understand. The only relevant records are business transactions from a single U.S. Bank account in the name of Bailey Contracting (the "U.S. Bank account"). The required records are simply "funds in and funds out." These funds consist of deposits from checks issued by Berman Printing Company to Bailey Contracting, and checks and other withdrawals by the Debtor from this single U.S. Bank account.

The Debtor has produced to the Plaintiff a significant quantity of business records of Bailey Contracting. Among these records are most of the bank statements concerning this U.S. Bank account from September 2004 through April 2005. However, strikingly significant for this adversary proceeding, these bank statements are incomplete in directly relevant respects. The "funds in" from checks issued from Berman Printing to Bailey Contracting, which would have been deposited in the U.S. Bank account, cannot be demonstrated.[1] Perhaps even more significant than whether the bank statements are complete, the Debtor is unable to produce, through the original checks, electronic versions of the checks or any other records, the "funds out"—*i.e.*, the withdrawal of funds[2], or explanations of the payees for checks for significant sums of money from this U.S. Bank account. Without the Debtor's production of these checks, or some other evidence of the payees, it is not possible to determine where these funds went and, as a result, the Plaintiff is prevented from obtaining evidence, to

---

1. Exhibit A shows checks from Berman Printing, with Bailey Contracting Services as the payee, dated as late as May 11, 2005. However, the bank statements stop on April 30, 2005. See Exhibit B. In addition, the March 2005 bank statement is missing. *Id.* See also Doc. 22, p. 21 (colloquy between Plaintiff's counsel and the Debtor concerning the missing March 2005 bank statement).

2. In at least one instance, the Debtor also does not have a recollection concerning ATM withdrawals, totaling almost $3,000, from the U.S. Bank account, nor were there any records provided to establish the use of these funds (Doc. 22, p. 16).

which it is rightfully entitled, in pursuit of its claims under § 523(a)(2) and (4).

Although the Debtor has sworn that "I have not destroyed, hidden or concealed any records of Bailey Contracting Services and in particular with respect to the Berman Printing Job" (Doc. 28, ¶ 4) and provided all the Bailey Contracting documents in his or his accountant's possession (Doc. 28, ¶ 2), this affidavit, even though uncontested at this stage, is not dispositive of the issue under § 727(a)(3). Notably absent from even the Debtor's self-generated affidavit is an affirmative declaration that the Debtor "kept or preserved recorded information, including bank records from which my financial condition might be ascertained." Accordingly, even accepting, solely for purposes of considering the motion for summary judgment, these limited representations in the Debtor's affidavit as true, the question remains whether the debtor has "failed to keep or preserve any recorded information." 11 U.S.C. § 727(a)(3); see *Strzesynski v. DeVaul (In re DeVaul)*, 318 B.R. 824, 833 (Bankr. N.D.Ohio 2004) ("The list of prohibited acts is stated in the alternative: concealing, destroying, mutilating, falsifying, *failing to keep or preserve*."; emphasis added).

■ In this instance, the record is undisputed that the Debtor failed to retain recorded information concerning many checks paid from this single U.S. Bank account of Bailey Contracting. These records are not tangential, or simply sought by the Plaintiff as part of a broad discovery request, a "fishing expedition", or an arbitrary request to have a complete set of all the business records of Bailey Contracting, but; instead, are material records that go to the heart of the Plaintiff's causes of action under § 523(a)(2) and (4). Some excerpts from the Debtor's deposi-

tion demonstrate the necessity of providing this information:

Q. The $2,000 check, 2035, do you know what that is for?

A. No, I don't.

Q. There's a number of large checks for round dollar amounts. Were those checks that you cashed?

A. I don't recall.

Q. Did you cash checks out of this account?

A. What do you mean by cash checks out of this account?

Q. Write a check to yourself or write a check to cash.

A. There may have been times when I did that, yes.

Q. It's almost $7,000 in January. Would you have written yourself that much in cash checks in one month?

A. I don't think so, but I don't recall.

Q. Do you have the records which would show each one of these checks and who it was written to?

A. No, I don't.

Q. You have to get me those records. We want to know what all your checks were written to. (Doc. 22, p. 9–10).

Q. Well, can you tell me looking at this February bank statement what was personal money in this account?

A. I couldn't give you an accurate figure.

Q. How would you estimate it?

A. That would be a good question.

Q. You don't know the answer?

Q. No.

(Doc. 22, p. 18).

Q. All right. Well, in January, I asked you for all the bank statements from Bailey Contracting Services. And the last one I got was April of '05, but you still had an account there. You don't keep the bank statements?

A. I didn't.

Q. Well, how are you going to do the tax returns if you don't keep the bank statements?

A. That's a good question.

Q. When's the last time you balanced the books for Bailey Contracting Services?

A. I don't understand what you mean by "balance."

Q. Did you balance the checkbook at the end of each month?

A. I didn't, no. That was done by the accountant, or I am assuming that's what he did. I wasn't in his office, I wouldn't know.[3]

Q. Does it surprise you that CM Temporary Services says that they didn't get paid over a hundred thousand dollars from Bailey Contracting Services?

A. I would say yes.

Q. It sounds about right?

A. No, that's—it doesn't surprise me that that's what they are saying. That doesn't necessarily mean that's what it is.

Q. What do you think it is?

A. I would have to do some calculations and figure that out. I don't know.

Q. It's some dollar amount?

A. Yeah, I owe them some money.

Q. And what happened to the money that you owed them? Where did it go?

A. Like I said, that's a good question. There's quite a few things I could have bought with that kind of money.

Q. Did you buy stuff with that kind of money for your personal self?

A. No, I didn't. That's why I have no recollection of where the money—what happened to the money.

Q. You do not know where it went?

A. I don't know.

(Doc. 22, p. 25–26).

Q. And so you paid personal bills sometimes out of the Bailey Contracting Services, LLC account?

A. If it was my money, yes.

Q. How would it be your money in the LLC account?

A. Because I would have other customers who I was doing work for and I would make those deposits. And then what was my profit would be my money.

Q. And how did you keep track of that?

A. By the invoices, I believe. I mean, you look at the deposits, you can tell where the deposits came from. And then—

Q. Well, can you tell me looking at this February bank statement what was personal money in this account?

A. I couldn't give you an accurate figure.

Q. How would you estimate it?

A. That would be a good question.

Q. You don't know the answer?

A. No.

(Doc. 22, p. 18).

Nevertheless, the Debtor argues that these bank records are corporate records and not his responsibility as a Debtor to produce for the Plaintiff. Even ignoring the Debtor's statement in his deposition that "I owe them some money", the undisputed record shows the Debtor conceded

---

**3.** To the extent the Debtor is arguing he is not responsible for producing business records simply because he employed an accountant, who was never an officer of Bailey Contract- ing, the court rejects this explanation as wholly inadequate under the requirements of § 727(a)(3).

that this single U.S. Bank account was also for his personal banking and not exclusively for the corporation, Bailey Contracting.[4] In fact, during the relevant time period, the record establishes that the Debtor had no separate, personal bank account. The absence of these bank account records of Bailey Contracting, in the particular circumstances of this bankruptcy case and related adversary proceeding, are directly relevant to ascertain the Debtor's financial condition. See *Dolin v. Northern Petrochemical Co. (In re Dolin)*, 799 F.2d 251, 253 (6th Cir.1986) ("The Bankruptcy Court found that Dolin's creditors were unable to ascertain Dolin's financial condition and business transactions; that Dolin withdrew corporate funds for his personal use; that the withdrawal records which do exist do not indicate the ultimate disposition of the money; that Dolin did not maintain books, accounts or records of his own personal affairs...."); Cf. *Blanchard v. Ross (In re Ross)*, 1999 WL 10019, at *4, n. 7 (Bankr. E.D.Pa. Jan.4, 1999), *citing Williamson Construction, Inc. v. Ross (In re Ross)*, 217 B.R. 319, 331–32 (Bankr.M.D.Fla.1998) (corporate records may be relevant to an individual's debtor's financial affairs).[5]

The record is undisputed that the Plaintiff not only failed to supply complete bank statements from this single U.S. Bank account for the relevant time period, but failed to produce copies of checks, drawn for large amounts to unknown payees, and failed to otherwise provide recorded information showing the disposition of funds from this account. Since the essence of the Plaintiff's § 523 causes of action concern the failure of the Debtor, through his corporation, to turn over funds from the U.S. Bank account, it is clear that the Debtor has failed to provide "substantial completeness and accuracy for a reasonable period...." *Union Planters Bank, N.A. v. Connors*, 283 F.3d 896, 899 (7th Cir.2002), *citing Martin*, 141 B.R. at 995.

In brief, the Debtor simply failed to provide recorded information, specifically business transactions to the Plaintiff concerning the single U.S. Bank account involving the parties' funds. Cf. *Wachovia Bank, N.A. v. Spitko (In re Spitko)*, 357 B.R. 272, 307–08 (Bankr.E.D.Pa.2006) (corporate records of a closely held corporation, where the debtor is a shareholder and officer of that corporation, may be relevant to a debtor's financial situation for purposes of § 727(a)(3)).

**4.** Q. Did you have a separate bank account for your personal account in February of '05?

A. No.

...

Q. Did you have any other bank accounts in February of '05 besides this one?

A. No, I didn't. This is the only bank account that's ever been set up for banking contracting.

Q. Okay. Did you have any other bank accounts in February of '05—

A. No.

Q.—for any other entities or for your own self?

A. No.

Q. And so you paid personal bills sometimes out of the Bailey Contracting Services, LLC account?

A. If it was my money, yes.

(Doc. 22, p. 16–18).

**5.** The court also notes the facts in this record meet the standard under Ohio law for piercing the corporate veil. See *Belvedere Condominium Owners' Ass'n v. R.E. Roark Cos., Inc.*, 67 Ohio St.3d 274, 289, 617 N.E.2d 1075 (1993) ("[T]the corporate form may be disregarded and individual shareholders held liable for corporate misdeeds when (1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong.").

### The Debtor Failed to Provide Adequate Bank Records and Has No Justification Under the Circumstances

■■■ Having found the records produced by the Debtor not sufficient to meet the requirement of § 727(a)(3), the court further finds the Debtor has not met his burden to establish the failure was justified under all the circumstances. In fact, beyond taking the factually demonstrated erroneous position that the U.S. Bank account is strictly a corporate account, the Debtor has failed to provide recorded information explaining business transactions from this single bank account involving funds of the parties, including bank statements and information concerning the payees on checks from that account.

The court finds nothing in the record to suggest the Debtor lacked the sophistication, education or any other attribute necessary to produce copies of checks, complete bank records of deposits of checks issued by Berman Printing Company, or other evidence to explain where funds went from this single U.S. Bank account, when the Debtor conceded he used the same bank account for his personal banking and that he owes the Plaintiff money.

Specifically, assuming that the Debtor is correct that he has supplied all the business records in his possession and in possession of his accountant (Doc. 28, ¶ 2), the Debtor has never explained, in any manner consistent with the standards of § 727(a)(3), why he cannot produce the relevant bank records or other evidence demonstrating "funds in and funds out"

from the single U.S. Bank account used for Bailey Contracting and the Debtor personally. It is clear that complete records could allow the Plaintiff to determine where, and to whom, funds flowed out of that bank account and, if the Debtor committed non-dischargeable fraud as to the disputed debt.[6]

The Debtor also argues that, despite whatever documents were not turned over, the Debtor's production of business records was adequate and, if not, is justified in the circumstances of this case and related adversary proceeding. The Debtor lists in his affidavit a series of documents provided to Plaintiff's counsel. However, the issue is not what was produced to the Plaintiff, but what was not produced—the U.S. Bank account records or other evidence of "funds in and funds out" directly relevant to the heart of the Plaintiff's dischargeability causes of action. As the Debtor concedes in the excerpts of his deposition, the Plaintiff, through its counsel, has asked many "good questions", but the Debtor has not given the Plaintiff the recorded information required by § 727(a)(3) to find any good answers.

■■■ By voluntarily choosing to file a chapter 7 bankruptcy petition and seeking the privilege of a discharge of most pre-petition debts, which might otherwise be collected by creditors under applicable non-bankruptcy law, the Debtor has a responsibility to provide certain financial information to trustees, creditors and other

---

**6.** Viewing all of the evidence in the best light to the Debtor, there is nothing in the Debtor's affidavit, or in any other evidentiary materials in this record, to suggest the necessary records were ever provided to allow the Plaintiff to determine where the parties' funds went from the single U.S. Bank Account nor any justification in the circumstances of this case. The undisputed record in this adversary pro-

ceeding is thus distinguished from *Mercantile Peninsula Bank v. French (In re French)*, 499 F.3d 345, 356–57 (4th Cir.2007) (Factual issue existed as to whether the records provided by the Debtor "were sufficient to permit an assessment of his financial condition and that, to the extent [the Debtor] had failed to produce certain records, such failure was justified in the circumstances.").

parties in interest. Although this court recognizes that the denial of a discharge is a severe remedy, the obligation to supply required financial information is a continuing cost in a debtor's attempt to obtain a discharge. *Ernst v. Walton (In re Walton)*, 103 B.R. 151, 159 (Bankr.S.D.Ohio 1989).

In the circumstances of this adversary proceeding and underlying estate case, the Debtor simply has failed to provide the minimally required recorded information compelled under § 727(a)(3) and the Debtor's failure was not justified under all the circumstances.

### Conclusion

The Plaintiff has established all the elements under § 727(a)(3) by a preponderance of the evidence, the record demonstrates there are no material disputes of fact concerning the § 727 cause of action and the Plaintiff has met the standard for summary judgment. The *Plaintiff's Motion for Summary Judgment Under 11 U.S.C. § 727(a)(3)* (Doc. 23) is **GRANTED** and the Debtor's Discharge is **DENIED.** The remaining causes of action directed to § 523 are deemed **MOOT** in this court and the Plaintiff may take further action against the Debtor in an applicable non-bankruptcy forum.

**SO ORDERED.**