In re John Edwin DEVAUL,
Jr., Debtor.

Joann Strzesynski, Plaintiff,

v.

John Edwin Devaul, Jr., Defendant.

Bankruptcy No. 02–32251.
Adversary No. 02–3310.

United States Bankruptcy Court,
N.D. Ohio,
Western Division.

Nov. 24, 2004.

John P. Korn, Toledo, OH, for Debtor.

## MEMORANDUM OF DECISION

MARY ANN WHIPPLE, Bankruptcy Judge.

This adversary proceeding is before the court for decision after trial upon Plaintiff Joann Strzesynski's complaint objecting to Defendant/Debtor's Chapter 7 discharge under 11 U.S.C. § 727(a)(3) and (a)(5).

The court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b) and the general order of reference entered in this district. Proceedings to determine objections to discharge are core proceedings that this court may hear and determine. 28 U.S.C. § 157(b)(1) and (b)(2)(J).

This memorandum of decision constitutes the court's findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52, made applicable to this adversary proceeding by Fed. R. Bankr.P. 7052. Regardless of whether specifically referred to in this Memorandum of Decision, the court has examined the submitted materials, weighed the credibility of the witnesses, considered all of the evidence, and reviewed the entire record of the case. Based upon that review, and for the reasons discussed below, Defendant is entitled to judgment on the complaint.

## FINDINGS OF FACT

Since 1993, Defendant has been engaged as a sole proprietor in the residential rental real estate business. His properties were located primarily in a low-income area of North Toledo. In order to assist in funding the repairs and other improvements and expenses related to these properties, he borrowed approximately $45,000 from his sister, the plaintiff in this case, during an approximately seven month period between June and November, 1999. In connection with these loans, he executed a cognovit note in the amount of $45,000 with interest to be paid at a rate of 22.67% during the first twelve months and at a rate of 8% thereafter. [Pl.Ex. 1]. The cognovit note was secured by a mortgage on property located at 2126 North Ontario Street, Toledo, Ohio. [Pl.Ex. 2]. Although the mortgage was at all times in Plaintiff's possession, it was never recorded. The property was sold in 2001 [Def. Ex. B] and

Defendant paid Plaintiff approximately $1,000 of the $2,486 net proceeds from the sale. Plaintiff is, thus, an unsecured creditor in Defendant's underlying bankruptcy case. Plaintiff testified that Defendant had borrowed money from her in the past but had always repaid the debt.

Plaintiff called Defendant's accountant, Jerry Hill, to testify about Defendant's financial records. Defendant heard and characterized Hill's testimony as "pretty decently correct." Hill had prepared income tax returns for Defendant and his now ex-wife since 1993. Hill testified that Defendant's ex-wife worked for the Internal Revenue Service and, prior to Defendant's divorce in 1998 or 1999, maintained the business records for Defendant, records Hill described as impeccable. After the divorce, Defendant, who has what amounts to an eighth grade education and is described by Hill as an "unsophisticated" and "amateur" businessman, began keeping his own records. Plaintiff testified that her brother had asked her to keep his records, but that she did not do so because she would have to learn how to keep them. Hill and Defendant both testified that many of his tenants paid in cash, often in installments throughout the month. Each month he listed all of his properties on paper and kept track of who had and had not paid their rent. None of the rental units, Defendant testified, were ever fully occupied and rented. Although he used the same checking account for both personal and business purposes, he generally noted the address of the rental property on checks that were written to cover expenses for that property.

Defendant had not filed his income tax returns for the years 1999, 2000 and 2001 and he contacted Hill to assist him in doing so. Hill testified that Defendant provided him with boxes of documents that included bank statements from which they were able to subtract deposits representing loan proceeds and earned wages in order to determine gross rental income. Although the boxes of documents provided by Defendant also included closing statements and cancelled checks, Hill suggested that Defendant sort the documents himself rather than incur the expense of Hill's staff doing so. Defendant took the boxes of documents to a friend to help him organize them; however, in the process, his friend discarded documents, including some real estate closing statements and cancelled checks which he said would not be needed in light of Defendant's bankruptcy which had been filed. There was no evidence or testimony regarding the timing of the transactions that were reflected in the discarded closing statements. But Defendant did provide the closing statement evidencing a November 30, 2001, sale of the property for which he had granted Plaintiff a mortgage.

Notwithstanding the loss of certain records, Hill testified that he was able to determine expenses relating to the properties from invoices and receipts provided by Defendant, although he was unable to determine specifically to which property they related. Hill prepared a profit and loss statement for Defendant for 1999, and further was able to prepare Defendant's 1999 income tax return. Although neither of these documents was presented to the court, Plaintiff did not present evidence that they were not produced or available. Hill did not prepare the 2000 and 2001 income tax returns, not because of insufficient information, but because he had not been paid for the work already completed. The documents provided to Hill were also provided to Plaintiff at Defendant's 2004 exam. Plaintiff testified, however, that she did not look at any of the documents that were produced at that time and there is nothing in the record that shows what was or was not in the boxes produced.

Hill also testified that Defendant was involved in two other businesses: D & D Management and Burbank Investments. Defendant's partner in D & D Management maintained its records and provided bank statements and spreadsheets from which Hill was able to prepare tax documents relating to that entity. [*See* Def. Exs. O, P, & Q]. With respect to Burbank Investments, Defendant testified that it was a limited liability company in which he had invested $7,500 and owned three shares, and that he had sold his interest at some undisclosed time and was not sure if he got all of his investment back or not. In addition, Hill testified that he had received income tax K–1 schedules relating to Defendant's share of income, credits, and deductions.

Debtor filed his petition for relief under Chapter 7 of the Bankruptcy Code on April 9, 2002.

### LAW AND ANALYSIS

Under 11 U.S.C. § 727, an individual debtor is entitled to a discharge unless one of the ten exceptions to discharge enumerated in that section is established. Plaintiff objects to Defendant's Chapter 7 discharge on two grounds, pursuant to § 727(a)(3) and (a)(5).

### I. 11 U.S.C. § 727(a)(3)

#### A. Burden of Proof

██ A debtor will be denied a discharge if he has "concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information ... from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case." 11 U.S.C. § 727(a)(3). The purpose of this provision is "to give creditors and the bankruptcy court complete and accurate information concerning the status of the debtor's affairs and to test the completeness of the disclosure requisite to a discharge." *Meridian Bank v. Alten,* 958 F.2d 1226, 1230 (3rd Cir.1992); *Turoczy Bonding Co. v. Strbac (In re Strbac),* 235 B.R. 880, 882 (6th Cir. BAP 1999). It also ensures that "creditors are supplied with dependable information on which they can rely in tracing a debtor's financial history." *Meridian Bank,* 958 F.2d at 1230. However, the Bankruptcy Code "does not operate in a 'draconian fashion to require maintenance, preservation, and production of comprehensive records of every minute detail of a debtor's financial and business activity as a precondition to a grant of discharge.'" *Ag Credit, ACA v. Walton (In re Walton),* 165 B.R. 610, 616 (Bankr.N.D.Ohio 1994)(citing *James v. McCoy (In re McCoy),* 114 B.R. 489, 500 (Bankr.S.D.Ohio 1990)).

██ Plaintiff has proven through her testimony and her Exhibits 1, 2, and 3 that she is a creditor of her brother's, and so she has standing under 11 U.S.C. § 727(c)(1) to object to his discharge. The party objecting to discharge has the burden of proving by a preponderance of the evidence that the exception applies. *Keeney v. Smith (In re Keeney),* 227 F.3d 679, 683 (6th Cir.2000); Fed. R. Bankr.P. 4005; *see Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Plaintiff thus has the initial burden of proving Defendant's lack of recorded information within the meaning of the statute. *Meridian Bank,* 958 F.2d at 1233. Under § 727(a)(3), however, once the plaintiff has made an initial showing that the debtor lacks records, the burden of proof shifts to the defendant to justify the lack of records. *Id.; Cadle Co. v. Jacobowitz (In re Jacobowitz),* 296 B.R. 666, 671 (Bankr. S.D.N.Y.2003); *see Strbac,* 235 B.R. at 883.

## B. Plaintiff's Proof of Missing Recorded Information

In analyzing existing precedent applying § 727(a)(3), the court experienced great frustration in determining exactly what Plaintiff must prove to meet her initial burden. The parties also likely experienced this frustration in deciding what to do at trial, which may explain why the court was never provided with or informed of the contents of the box (or it may have been boxes) by one party or the other. As discussed below, there are several problems with the existing body of case law interpreting § 727(a)(3). In many respects, existing case law does not seem to account for the actual language of the statute.

 The statute implicitly casts an affirmative duty on debtors not to destroy and to keep and preserve records "from which the debtor's financial condition or business transactions might be ascertained." *Cf.* 11 U.S.C. § 521 (explicitly captioned "Debtor's duties", which include "surrender[ing] to the trustee...any recorded information relating to property of the estate."). But it is not a debtor's burden to prove in § 727(a)(3) litigation that this implied statutory duty has been performed. Rather, it is the creditor's burden to prove the debtor's statutory duty has *not* been performed. *See PNC Bank v. Buzzelli (In re Buzzelli)*, 246 B.R. 75, 99–100 (Bankr. W.D.Pa.2000). Although paying lip service to the burden of proof, some courts seem to rule for plaintiffs because debtors have failed to produce "adequate records" or "organized records." *See Union Planters Bank v. Connors (In re Connors)*, 283 F.3d 896, 899 (7th Cir.2002)("It is the debtor's duty to maintain and provide the court with organized records of its financial dealings"); *Clean Cut Tree Serv., Inc. v. Costello (In re Costello)*, 299 B.R. 882, 898 (Bankr.N.D.Ill.2003)("Finally the burden

in on the debtor to systematically arrange and reconstruct his financial affairs."); *Buzzelli*, 246 B.R. at 88 (What the court wants "is the best shot from the debtor at explaining his financial history within three or four years prior to this bankruptcy [case] *and documenting it.*" (emphasis in original)); *Aetna Ins. Co. v. Nazarian (In re Nazarian)*, 18 B.R. 143, 149 (Bankr. D.Md.1982) (court unable to ascertain whether debtor concealed, destroyed, or failed to keep adequate records, but his failure to provide documentation suffices for denial of discharge under § 727(a)(3)); *Jacobowitz*, 296 B.R. at 671 ("The issue to be resolved...is whether a debtor's records are adequate to explain his finances..."). *Cf. In re Campbell*, No. 1:93–cv–929, 1994 U.S. Dist. LEXIS 15070, 1994 WL 924299 (W.D.Mich. Sept.28, 1994)(In a case that may more properly be seen as a "justification" case, discharge was granted notwithstanding incomplete records where debtor's expert testified that existing records provided sufficient information to reconstruct debtor's financial history).

A variant of the first problem arises in then articulating what a debtor's implied duty is under § 727(a)(3). In doing so, some courts seem to mix up the creditor's proof of whether the debtor failed to keep records with the debtor's proof of justification. The root of this difficulty stems from pronouncements of the implied duty that a debtor must maintain "adequate" records as a prerequisite to discharge. So, for example, whether "adequate" records have been kept in furtherance of a debtor's duty is then said to be measured by the nature of the debtor's business or income, the debtor's education and work experience and the debtor's overall financial sophistication. *See, e.g., Razzaboni v. Schifano (In re Schifano)*, 378 F.3d 60, 70, n. 3 (1st Cir.2004); *Wynn v. Wynn (In re Wynn)*,

205 B.R. 97, 101 (Bankr.N.D.Ohio 1997)( In determining the adequacy of records, other courts have measured the quality of a debtor's records "against the type of books and records kept by a reasonably prudent debtor with the same occupation, financial structure, education and experience."); *Costello*, 299 B.R. at 897 (stating that courts may consider size, complexity, and nature of the debtor's business; his educational background and level of sophistication; his experience and business acumen; and his personal financial structure). But these are the same factors that are generally stated to be part of whether "justification" has been shown for the absence of records under all of the circumstances of the case. *E.g. Meridian Bank*, 958 F.2d at 1231; *Buzzelli*, 246 B.R. at 98. So the two standards tend to become conflated and confused, which is problematic because different parties have the burden of proof on the statutory elements of lack of records and of justification. And the real problem with such an analysis is that § 727(a)(3) simply does not specify that debtors must keep "adequate" or "complete" or "organized" records, as many courts state. Much of the case law thus amounts to an inquiry, at odds with the statutory language, into whether a debtor has kept "adequate" or "complete" or "organized" records. *E.g., Connors*, 283 F.3d at 899; *Pher Partners v. Womble (In re Womble)*, 289 B.R. 836, 859 (Bankr. N.D.Tex.2003) (debtor's records characterized as spaghetti). Rather, a debtor must not conceal, destroy or fail to keep or preserve "any" recorded information from which his financial condition or business transactions "might" be ascertained.

The last problem discerned by this court in surveying existing case law is that some courts place an improperly high initial burden on creditors. *See Buzzelli*, 246 B.R. at 97. The most often-cited test for applying § 727(a)(3) is from the Third Circuit case *Meridian Bank*, wherein the court identified a two part test that must be met by creditors. Under *Meridian Bank*, "in order to state a prima facie case under section 727(a)(3), a creditor objecting to the discharge must show (1) that the debtor failed to maintain and preserve adequate records, and (2) that such failure makes it impossible to ascertain the debtor's financial condition and material business transactions." *Meridian Bank*, 958 F.2d at 1232.[1] The language of the statute focuses on records a debtor does *not* have. As a result of *Meridian Bank*, however, many courts instead focus on what records a debtor *does* have and then require the creditor to show that the debtor's financial condition cannot be determined from those records. *See, e.g., Schifano*, 378 F.3d at 70 (summary judgment for debtor reversed because there was a material question of fact whether debtor's failure to maintain bank records made it impossible to ascertain financial transactions); *Wynn*, 205 B.R. at 101; *Wazeter v. Michigan National Bank (In re Wazeter)*, 209 B.R. 222, 230 (W.D.Mich.1997)("In the absence of any specific evidence [that]...the documents produced were inadequate for creditors to reconstruct debtor's financial history, I conclude that plaintiff bank failed to provide sufficient evidence on one element of its prima facie case.").

Requiring a creditor to prove that it is "impossible" to determine a debtor's financial condition from existing records is not

---

1. This language from the *Meridian Bank* case is *dicta*, although it is not generally cited as such. As expressly stated by the Third Circuit, sufficiency of records was not the issue in *Meridian Bank*. Since it was "undisputed that the Altens failed to keep or preserve records...[t]he question before this court [was] whether their failure was justified under all the circumstances of the case." *Id.* at 1230.

supported by the language of the statute, which requires a showing of missing recorded information from which a debtor's financial condition or business transactions "might" be ascertained. *See Buzzelli*, 246 B.R. at 97. This stated test of "impossibility" in turn leads to confusion about what has to be done with existing records to prove a case under § 727(a)(3). Does a creditor have to analyze them or, more likely, have them analyzed by an expert, leading to opinion testimony that it is impossible to determine the debtor's financial condition from what is there? *See Wazeter*, 209 B.R. at 229 (On the one hand, "[i]n stating the 'impossibility' test, however, no court has suggested that it means that a debtor is relieved from the burden of providing records..." On the other hand, the court notes "[n]or did the bank provide any expert testimony that Wazeter's financial history could not be constructed from the records he provided."). Or does that job ultimately fall to the court to sift through the debtor's existing records and make such a pronouncement as an "ultimate fact"? *See Meridian Bank*, 958 F.2d at 1229, 1230; *cf. In re Juzwiak*, 89 F.3d 424, 427 (7th Cir.1996)("[C]ourts and creditors should not be required to speculate as to the financial history or condition of the debtor, nor should they be compelled to reconstruct the debtor's affairs.").

If the *Meridian Bank* test establishes the correct analysis under § 727(a)(3), then Plaintiff in this case has failed to meet her burden of proof. Plaintiff testified that she did not look at the records produced to her. She did not, nor was she qualified to, render any opinion in her testimony as to whether Defendant's financial condition and business transactions could be determined from them. Accountant Hill testified, but most assuredly did

not render such an opinion at trial. Hill's testimony was the only evidence offered by Plaintiff relating to the ability to ascertain Defendant's business transactions from *existing* records. Although Defendant's bank statements were incomplete at the time of trial, Hill indicated they were complete when originally produced and, at that time, he was able to use them to prepare a gross rental income spreadsheet for years 1999, 2000 and 2001.[2] In addition, notwithstanding the lack of cancelled checks, source documents consisting of receipts and invoices enabled Hill to prepare the income tax return for 1999. According to Hill, the tax returns for 2000 and 2001 were not prepared because he had not been paid for work already completed. There was no testimony concluding that Defendant's business transactions during those years could not be ascertained from the records provided by Defendant. And if it is the court's job to analyze existing documents as part of its decision-making process, nor could the court so conclude. The court does not know the contents of the mystery box[es] of existing but unidentified documents. Moreover, most of the documents expressly identified as existing, whether in the box or not, were not provided to the court. *Wazeter*, 209 B.R. at 229. These facts make it impossible for the court to draw such a conclusion on its own.

■ All of which leads back to the central question of what this court *is* requiring Plaintiff to prove to meet her burden. The foregoing explanation shows why this court is largely ignoring existing case law on what a plaintiff's initial burden requires. Instead, as the Supreme Court has repeatedly directed, in interpreting the Bankruptcy Code the starting point must always be the existing statutory text, with the court's function to enforce the statute

---

**2.** It was not until after these spreadsheets were prepared by Hill that Defendant sought assistance in organizing his records and some bank statements were discarded.

according to its terms unless the disposition required by its terms is absurd. *Lamie v. United States Trustee*, 540 U.S. 526, 124 S.Ct. 1023, 1030, 157 L.Ed.2d 1024 (2004); *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000).

The language of § 727(a)(3) is very broad. The list of prohibited acts is stated in the alternative: concealing, destroying, mutilating, falsifying, failing to keep or preserve. One court has emphasized that, as used in the statute, "keep" and "preserve" are not synonymous. Rather, " 'keep' has the same meaning it would have in phrases such as 'to keep a diary' or 'keep a record,' that is, to maintain a record by entering it in a book. Otherwise, the repetition of the word 'preserve' is superfluous, a disfavored result." *Peterson v. Scott (In re Scott)*, 172 F.3d 959, 969 (7th Cir.1999)(citing *Mackey v. Lanier Collection Agency & Serv.*, 486 U.S. 825, 837 & n. 11, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988)). The object of these prohibited acts is also very broadly stated: *"any* recorded information, including books, documents, records, and papers . . ." The only statutory qualification is that the recorded information not kept or preserved by a debtor must be such that one "might" be able to ascertain his or her financial condition or business transactions from it.

 Accordingly, to meet the initial burden under § 727(a)(3), the creditor must first offer evidence of the general nature of Debtor's business or personal financial position (e.g. consumer, business relationships and interests, general nature of business interests and sources of income) and the types of transactions about which recorded information is sought. This proof is not complex and can likely be developed through the Debtor's filed schedules and statement of affairs commencing the case, which documents require sworn information about assets, liabilities, income and source of income for the two years before commencement of the case, payments to creditors within 90 days before the case, lawsuits, gifts, closed and open bank accounts, and details about the nature, location and name of a debtor's business interests. *See* Official Forms 1, 6 and 7; Fed. R. Bankr.P. 9009. The first meeting of creditors and Bankruptcy Rule 2004 also offer procedural avenues for development of such evidence.

Second, the plaintiff must present evidence identifying for the court, on summary judgment or at trial, what recorded information it alleges has been concealed, destroyed, mutilated, falsified, or not kept or preserved by a debtor. Such proof could likewise be easily developed, through the first meeting of creditors, a Bankruptcy Rule 2004 examination of debtor or other entities, or a request for production of documents under Rule 2004 in conjunction with the oral examination.

 Third, the plaintiff must show how the missing recorded information "might" enable a particular debtor's actual financial condition or business transactions to be ascertained under the circumstances of the case, which is the ultimate connection between the first two elements of proof. *See Grange Mutual Ins. Co. v. Benningfield (In re Benningfield)*, 109 B.R. 291, 293 (Bankr.S.D.Ohio 1989)("[T]he requirement in § 727(a)(3) . . . includes as a necessary assumption, that any records which have not been kept have possible material relevance to his financial condition."). In some cases, this may require opinion testimony by lay witnesses, Fed.R.Evid. 701, or qualified expert witnesses, Fed.R.Evid. 702. In others, the simplicity of the debtor's circumstances and the nature of the missing recorded information may be so basic as to allow the court to otherwise draw the conclusion on its own that the

missing records are inherently such that one "might" be able to ascertain a debtor's financial condition or business transactions from them.

The court understands that this generally will not be a difficult standard of proof for a creditor to meet. But Congress' use of the word "might" emphasizes its intended lack of rigor in the statutory standard. And the statute recognizes the practical reality that debtor is the gatekeeper of his or her own documents and information. *Schifano*, 378 F.3d at 63. And that is also why the burden then quite properly shifts to the debtor to prove justification under all of the circumstances for any missing records, which, for example, could range from proving that a debtor's financial condition and business transactions *can* be fairly ascertained from otherwise existing records, to the lack of sophistication or education of the debtor, to the temporal insignificance of the transactions in issue, to the accidental destruction of missing records. In most § 727(a)(3) cases, the heart of the case will thus be a debtor's justification for lack of recorded information.

In undertaking its analysis of the plain meaning of § 727(a)(3), this court is mindful of the oft-stated principle that, consistent with the fresh start policy underlying the Bankruptcy Code, exceptions to discharge must be construed strictly against the objecting creditor and liberally in favor of the debtor. *E.g., Hendon v. Oody (In re Oody)*, 249 B.R. 482, 487 (Bankr.E.D.Tenn.2000). It seems, however, that this statement of principle has become more a shibboleth than a meaningfully used guide to interpretation and application of the statute. And in any event, such general statements of policy cannot override the plain meaning of the statute. In the context of § 727(a)(3), this principle is of more meaningful guidance in exercising the court's broad discretion in deciding whether a debtor has properly justified the lack of recorded information. *See Lansdowne v. Cox (In re Cox)*, 41 F.3d 1294, 1297(9th Cir.1994)(applying policy in justification case).

The court believes that its analysis better comports with the plain meaning of the statute. Moreover, the court finds only one Sixth Circuit case applying § 727(a)(3), *Dolin v. Northern Petrochemical (In re Dolin)*, 799 F.2d 251 (6th Cir.1986), and believes that its analysis is also consistent with the outcome of that case. In *Dolin*, the Sixth Circuit affirmed the bankruptcy court and district court decisions denying a debtor's discharge. But *Dolin* lacks discussion of the standard under § 727(a)(3) insofar as what is necessary for a creditor to prove to carry its initial burden. Rather than the sufficiency of plaintiff's proof, the primary issue in *Dolin* was whether debtor's cocaine addiction was an adequate justification for his failure to keep or preserve the missing records. But it is nevertheless clear from the opinion in *Dolin* that the court summarily used the analysis outlined above. Debtor Dolin was identified as the sole shareholder of two corporations. The business transactions in issue were his withdrawal of $500,000 over a three-year period from one corporation and more than $90,000 in less than one year from his other corporation. The missing information was recorded information about the withdrawals, corporate loan documents, and any books, accounts or records of his personal affairs. These are the types of records that might have permitted creditors to ascertain the actual amount of the withdrawals and the ultimate disposition of the substantial amounts of money taken out of his corporations.

Initially, the court notes that Plaintiff's case focused on records, or the lack there-

of, identifying transactions relating to Defendant's real estate rental business, which he conducted as a sole proprietor. Although Defendant was also involved in D & D Management, Hill testified that the records for that business were kept by Defendant's partner and were complete. The articles of organization for D & D [Def. Ex. M] and the 1999, 2000 and 2001 tax returns for D & D [Def. Ex. O, P and Q] are part of the record. In addition, Defendant owned three shares in Burbank Investments. Although records for this entity were kept by someone other than Defendant, Hill had received at some undisclosed time income tax K–1 schedules relating to his share of income, credits, and deductions. Plaintiff did not identify any missing recorded information relating to these entities or to Defendant's interests in them.

In working through Hill's and Defendant's testimony and the 16 written exhibits [Def. Exs. B–Q] admitted in Defendant's case, the court can identify both a list of records that Defendant had or has and a list that Defendant never had or does not now have.

The evidence in the record shows that Defendant had or has the following records:

1. 1999 Profit and Loss Statement prepared by Hill.

2. 1999 Income Tax Returns.

3. Spread sheets for property income for 1999, 2000 and 2001.

3. Complete bank checking account statements for 1999.

4. Partial bank checking account statements for 2000 and 2001.

5. Closing statements for 15 properties, one of which is now available [Def. Ex.B].

6. Invoices and Receipts for property expenses for each year, not organized.

7. Some cancelled checks from 1998 [Def. Ex. R–T].

8. Various legal documents including quit claim deeds recorded in November, 2000, from Lori Devaul to Defendant for seven properties [Def. Ex. J], four foreclosure complaints [Def. Exs. E–H], one promissory note for $8,000 to Robert and Maryann Burzynski [Def. Ex. K], and a July 1, 1999 Land Installment Contract with Defendant as vendee for seven different addresses [Def. Ex. N].

9. Second half 2001 real estate tax bills for 11 properties [Def. Ex. L].

10. Box[es] of records with unspecified contents.

The court wants to make clear that, unless specified by exhibit notations, not all of these documents, or copies of these documents, are part of the trial record. Rather, the court knows of their existence from the testimony of Hill and Defendant. Neither party told the court what is in the box[es] of records, so its contents remain a mystery. Hill testified that the box of records produced for the Bankruptcy Rule 2004 examination in this case was the same box of records he was provided by Defendant, which box he had returned in October 2002. Further, the court infers that this same box was what Plaintiff declined to look at when produced by Defendant.

The record also shows that Defendant did not keep or preserve the following documents:

1. Income tax returns for 2000 or 2001.

2. Records that show what property various expenses related to.

3. Complete bank checking account statements for 2000–2001.

4. Separate checking accounts for personal business and real estate business.

5. Permanent rent rolls, ledger or receipt book for rents.

6. Cancelled checks supporting payment of expenses.

7. Records thrown out by Defendant's friend Claude Monette.

Notwithstanding the mystery of what *is* in the box, the record shows that Defendant lacked the foregoing records. In other words, the court can otherwise infer from the record that they were *not* in the box and not otherwise available. The record does not show specifically what Claude Monnette threw out, other than that it was some of the records that Defendant had originally given to Hill and that Hill had given back so they could be organized more economically than having his staff do it.

 The foregoing recitation of missing items shows that Plaintiff has established that Defendant failed to keep or preserve recorded information. Indeed, the acknowledgment that Defendant's friend threw out some of the records that had originally been provided to Hill, and that were then given by Defendant to his friend to organize, is probably alone sufficient to meet Plaintiff's burden of proof. These were documents Hill needed to have organized by somebody in order to prepare Defendant's 2000 and 2001 tax returns. They were also the types of documents from which Hill was able to prepare a spreadsheet of rental income for each year and, ultimately, to prepare Defendant's 1999 tax return. Hill's testimony about the box shows that the contents amounted to recorded information from which Defendant's financial condition or business transactions "might" be ascertained. Specifically, Defendant's wages income and rental income, as well as the source documents (invoices and receipts) for his expenditures on properties, would show financial condition and business transactions, respectively.

Beyond the contents of the box, the court finds that tax returns for 2000 and 2001, complete bank statements and cancelled checks for 2000 and 2001 and a permanent ledger of his rent rolls were also missing recorded information from which creditors "might" ascertain Defendant's financial condition or business transactions. As to tax returns, all debtors are required to report employment income and income from other sources for two years prior to commencing their case on their statement of affairs. *See* Official Form 7. As other courts have held, income tax returns are generally an important, although not necessarily sufficient, *Jacobowitz,* 296 B.R. at 671–72, indicator of a debtor's financial condition. *E.g., Lubman v. Hall (In re Hall),* 174 B.R. 210, 215 (Bankr.E.D.Va.1994)("Without tax returns, the trustee would be forced to accept the uncorroborated statements of the debtors, as contained in their schedules. Tax returns are essential to the orderly administration of the debtor's estate, and necessary for the debtors to make a full presentation of their financial affairs to the trustee."); *Strbac,* 235 B.R. at 884. Likewise, Hill testified that Defendant's bank statements were an important aspect of determining his income. Other courts also routinely expect debtors, particularly those in business, to keep and produce bank records, including statements, check registers and cancelled checks. *E.g., United States v. Trogdon (In re Trogdon),* 111 B.R. 655, 659 (Bankr.N.D.Ohio 1990). And given the nature of Defendant's real estate rental business focused on properties in a poor neighborhood, a permanent rent roll and ledger was also a document that "might" have shown tenants and rental payments, the essential transactions in Defendant's business. Both Defendant and Hill testified that tenant rents were often paid in cash, and Defendant testified that sometimes they were received piece-

meal through the month. It is not otherwise clear that all of the cash paid as rents made it into the bank account for which Hill relied upon the statements to sort out wages income and rental income in preparing the 1999 tax return. Indeed the most basic of Defendant's business transactions were collecting rents, making mortgage payments on financed properties and paying property renovation, maintenance and repair costs. Yet Defendant was missing some records (some invoices and receipts, bank statements and cancelled checks, and closing statements identifying acquired and sold properties) that Hill clearly required and relied on to sort through such transactions and to prepare tax returns for Defendant.

As a result of the foregoing analysis, the court finds that Plaintiff has carried her initial burden of proof. The court will therefore turn to whether Defendant has met his burden of proving that his acts or failure to act insofar as his records were justified under all of the circumstances of the case.

### C. Defendant's Proof of Justification

■ The Bankruptcy Code does not state what constitutes justification for a failure to maintain records under § 727(a)(3). Instead, the trier of fact is required to make a determination based on all of the circumstances of the case. Courts generally employ the following standard from *Meridian Bank* in deciding whether a debtor has proven justification for missing records:

> The issue of justification depends largely on what a normal, reasonable person would do under similar circumstances. The inquiry should include the education, experience, and sophistication of the debtor; the volume of the debtor's business; the complexity of the debtor's business; the amount of credit extended

to debtor in his business; and any other circumstances that should be considered in the interest of justice.

*Meridian Bank*, 958 F.2d at 1231.

Applying this objective standard, courts have rejected a variety of justifications advanced under § 727(a)(3): small size of law practice, *Id.* at 1232; insufficient income to require filing of tax return did not justify failure to keep other records, *Strbac*, 235 B.R. at 884–85; tax protester's subjective belief that there is no obligation to file tax returns, *Hall*, 174 B.R. at 215; chemical dependency and gambling addiction, *Dolin*, 799 F.2d at 253; related entities are small and closely held, and underlying source documents all exist but are just disorganized, *Womble*, 289 B.R. at 858; records in possession of wife and others, *The Cadle Company v. Terrell*, No. 4:01–CV–0399–E, 2001 U.S.Dist. LEXIS 21944, 2002 WL 22075 (N.D.Tex. January 7, 2002); and lawyer's failure to pass bar exam and being made president of company only because of family nepotism, *Wazeter*, 209 B.R. at 230–31.

Other debtors have simply failed to prove the following asserted justifications by a preponderance of the evidence: written records or oral testimony otherwise establish debtor's financial condition, *Krohn v. Frommann (In re Frommann)*, 153 B.R. 113, 118 (Bankr.E.D.N.Y.1993) and *Colonial Bank v. Wynn (In re Wynn)*, 261 B.R. 286, 303–04 (Bankr.M.D.Ala. 2001); other physicians keep the records the same way, *Buzzelli*, 246 B.R. at 107–08; records were lost in moves or stolen in burglaries, *Id.* and *Shappell's Inc. v. Perry (In re Perry)*, 252 B.R. 541, 548 (Bankr. M.D.Fla.2000); and mice ate records, *Costello*, 299 B.R. at 898.

Other courts have accepted the following justifications for a debtor's failure to keep records under the particular circumstances of the case: debtor wife reasonably relied

on husband to keep records, *Cox,* 41 F.3d at 1298–1300; debtor running small concrete business was poorly educated, unsophisticated and had little business experience, *Eggert v. Sendecky (In re Sendecky),* 283 B.R. 760, 764 (8th Cir. BAP 2002); destruction of records not debtor's fault and debtor lacked ability or knowledge to establish or maintain bookkeeping system for real estate business, *Hunter v. Kinney (In re Kinney),* 33 B.R. 594, 596 (Bankr. N.D.Ohio 1983); self-employed debtor running gas station with very little formal education was justified in keeping records that were not "a paragon of clarity." *Energy Marketing Corp. v. Sutton (In re Sutton),* 39 B.R. 390, 398 (Bankr. M.D.Tenn.1984); medical problems arising from auto accident, *Benningfield,* 109 B.R. at 293; and unsophisticated businesswoman relied on bookkeeper to maintain books and records, *G & J Investments v. Zell (In re Zell),* 108 B.R. 615 (Bankr.S.D.Ohio 1989).

The evidence in this case offers three justifications for Defendant's missing recorded information: he lacked the ability to prepare his own tax returns and organize and maintain records due to his limited education; he depended on others to assist him; and the documents disposed of were discarded not by him but by a friend to whom he turned for assistance. The court finds that the evidence establishes all three facts, and further that they justify Defendant's failure to keep records under all of the circumstances of the case.

Defendant credibly described his limited education, having dropped out of high school at the beginning of his junior year. At that point, Defendant testified, he had earned only 1½ credits towards a high school diploma and had never taken a test. Therefore, he has essentially an eighth grade education. Defendant's missed education occurred as he was "lost in the mix" of a family breaking apart. Plaintiff confirmed her brother's lack of formal education. And Hill testified that he considered Defendant an "unsophisticated" and "amateur" businessman. As noted above, other courts have held that a similar lack of formal education, business experience and sophistication justified a failure to keep complete and organized records and to maintain ledgers and other compilations of business information. This case is very similar to *Kinney,* where the real estate business operated by debtor was essentially the same as Defendant's, the debtor's ability and knowledge were like Defendant's and, as here, records were destroyed through no fault of the debtor's. Under those circumstances, the bankruptcy court in *Kinney* rejected the plaintiff's claim that debtor should be denied a discharge under § 727(a)(3). As a result of Defendant's lack of education, the court believes he lacked the ability to prepare tax returns on his own, to organize receipts and invoices and cancelled checks and to develop and maintain on an ongoing basis a comprehensive ledger of his rental transactions and property expenses.

Defendant also showed awareness of his inability to attend to the record-keeping aspects of his business, which the court finds of significance in Defendant's favor. Rather than ignoring the duty to keep records, Defendant sought assistance from and relied on others to help him with those tasks. For example, as to Defendant's other business interests in Burbank and D & D, his co-owners handled record-keeping obligations; no evidence or even allegation of insufficiency of records has been presented as to those business activities.

As to his own real estate sole proprietorship, Hill's uncontradicted testimony was that, although Defendant had been involved in the real estate business for nearly ten years, until approximately 1999, he

had relied upon his wife's expertise in maintaining proper records. Lori Devaul worked for the Internal Revenue Service. According to Hill, her record-keeping was impeccable. And Plaintiff offers no evidence to the contrary that Defendant met his record-keeping obligations up to that point in time. But Defendant and Lori Devaul were divorced in 1998 or 1999. And after the divorce, in 2000, she quitclaimed her interest in a number of properties to Defendant. [Def. Ex. J]. The timing of the divorce meshes with the timing of the deterioration in records shown on the record.

Defendant then sought help from others, including his sister. Defendant had long relied on Hill to prepare tax returns, but in the absence of organized records as had been prepared by Lori Devaul, the costs of preparation were unaffordable. That in turn led Defendant to turn to his friend to help him organize records for Hill, which in turn resulted in records being thrown out as a result of his friend's mistaken judgment as to the need for records after bankruptcy. And where Defendant was acquiring, fixing up and renting out low value properties [Def. Ex. L, showing assessed valuations and locations] in distressed areas, which Plaintiff was fully aware of, the ability to pay for comprehensive bookkeeping assistance after Lori Devaul was no longer involved was limited. Reasonable reliance by debtors on others to maintain business records for them has been an important consideration to other courts in the overall analysis of justification for missing records. *Cox.* 41 F.3d at 1299–1300 (debtor relied on husband); *see Zell*, 108 B.R. at 627–28(debtor relied on bookkeeper).

In sum, Defendant showed an awareness of the need for records but an inability to keep them himself. His efforts to obtain help from others were not wholly success-ful: he and Lori Devaul were divorced, the accountant's fees were unaffordable due to the need to organize source documents, Plaintiff could not assist Defendant despite being asked to do so and his friend discarded needed paperwork at no demonstrated fault of Defendant's. All of these circumstances objectively justify the lack of recorded information available to creditors in this case.

## II. 11 U.S.C. § 727(a)(5)

Plaintiff also contends that § 727(a)(5) provides a basis for denial of Debtor's discharge. Under that section, a discharge will be denied if "the debtor has failed to explain satisfactorily...any loss of assets or deficiency of assets to meet the debtor's liabilities." 11 U.S.C. § 727(a)(5). There are two stages of proof with respect to § 727(a)(5). *Caterpillar, Inc. v. Gonzalez (In re Gonzalez)*, 302 B.R. 745, 754–55 (Bankr.S.D.Fla.2003). Under this section, the party objecting to discharge has the initial burden of proving substantial and identifiable assets that the debtor owned at a time not too far removed from the bankruptcy that are no longer available for creditors. *Id.; see McGowan v. Beausoleil (In re Beausoleil)*, 142 B.R. 31, 37 (Bankr.D.R.I.1992); *Costello*, 299 B.R. at 902. The burden then shifts to the debtor to satisfactorily explain the loss or deficiency of assets. *Id.* The debtor's explanation "must be reasonable and credible so as to satisfy the court that the creditors have no cause to wonder where the assets went." *Union Bank of the Middle East Ltd v. Farouki (In re Farouki)*, 133 B.R. 769, 777 (Bankr. E.D.Va.1991); *see also Beneficial Mortgage Co. v. Craig (In re Craig,)* 140 B.R. 454, 459 (Bankr.N.D.Ohio 1992). "To be satisfactory, the explanation must demonstrate the debtor has exhibited good faith in conducting his affairs and explaining the loss of assets." *Costello,* 299 B.R. at 901

(quoting *Bay State Milling Co. v. Martin (In re Martin)*, 141 B.R. 986, 999(Bankr.N.D.Ill.1992)).

The court in *Costello* held that a debtor's burden of explanation under § 727(a)(5) requires satisfaction of two criteria, with the first being that the explanation "must be substantiated by documentation." *Id.* This court agrees that the existence or lack of corroborating documentation is generally relevant to the credibility of an explanation but declines to hold that an explanation must always be supported by records to be satisfactory. *Craig*, 140 B.R. at 459 (stating that "the code provision does not dictate denial of discharge for failure to produce corroborating papers where the Debtor's testimonial assertions bear sufficient credibility"); *Pyramid Technology Corp. v. Cook (In re Cook)*, 146 B.R. 934, 940 (Bankr. E.D.Pa.1992) (stating that "in the absence of recorded information... the court may grant discharge based upon credible explanatory testimony"). As one court explained,

> [t]he word "satisfactorily," ... may mean reasonable, or it may mean that the court, after having heard the excuse, the explanation, has that mental attitude which finds contentment in saying that he believes the explanation—he believes what the [debtors] say with reference to the disappearance or the shortage .... He no longer wonders. He is contented."

*Craig*, 140 B.R. at 459 (citing *Trogdon*, 111 B.R. at 659); *see also Cook*, 146 B.R. at 941; *Slocum v. Wheeler (In re Wheeler)*, 38 B.R. 842, 846 (Bankr.E.D.Tenn.1984). In making its determination, as with § 727(a)(3), the court may consider such things as the nature of debtor's business, as well as his education and financial and business sophistication. *See Zell*, 108 B.R. at 629; *Cook*, 146 B.R. at 940.

The assets identified by Plaintiff at trial that Defendant at one time possessed but are no longer available to creditors are the $45,000 loaned to Defendant by Plaintiff in 1999 and the real property that was the subject of the mortgage Defendant granted Plaintiff. With respect to the real estate, Defendant produced the closing statement reflecting the sale of the property, which resulted in Defendant receiving net proceeds of $2,486 on November 30, 2001. Defendant testified that he paid $1,000 of this amount to Plaintiff, which she did not dispute. With respect to the money loaned by Plaintiff, Defendant indicated that a portion was used to make payments on his truck and to pay utility bills. In addition, he indicated to Plaintiff that he used the funds to renovate the low income area properties. There was no evidence at trial from which the court could infer that Defendant did not use the money he borrowed from his sister as stated. As Plaintiff acknowledged, the properties were in "kind of a run down neighborhood," but starting to look better. The court has considered Defendant's limited education and lack of sophistication in dealing with financial matters and, although specific documentation accounting for the $45,000 loaned nearly three years before Defendant filed bankruptcy was not offered, finds the testimony regarding his use of the funds to be credible and is satisfied that these funds have not been secreted away and no longer exist for distribution to creditors. Defendant is, therefore, entitled to judgement on this claim.

### CONCLUSION

Finding that Defendant has justified missing recorded information under § 727(a)(3) and that a satisfactory explanation has been offered regarding a loss of assets under 11 U.S.C. § 727(a)(5), judg-

ment will be entered in Defendant's favor on those claims. A separate judgment in accordance with this Memorandum of Decision will be entered by the Court.