RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 22a0060p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────────

IN RE: STEVEN P. MCDONALD,

*Debtor*.

─────────────────────────────────────────

ANDREW R. VARA, U.S. Trustee for Region 9,

*Plaintiff-Appellee*,

*v.*

STEVEN P. MCDONALD,

*Defendant-Appellant*.

No. 21-3678

───────────────────

Appeal from the United States District Court for the Northern District of Ohio at Akron;
No. 5:20-cv-01209—Sara E. Lioi, District Judge.

United States Bankruptcy Court for the Northern District of Ohio at Akron;
Nos. 5:15-bk-52629; 5:16-ap-05039—Alan M. Koschik, Judge.

Decided and Filed:  April 1, 2022

Before:  McKEAGUE, STRANCH, and BUSH, Circuit Judges.

───────────────────

## COUNSEL

**ON BRIEF:**  Matthew Abens, HARVEY + ABENS CO., LPA, Middleburg Heights, Ohio, for Appellant.  Amy L. Good, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

———————————

**OPINION**

———————————

JOHN K. BUSH, Circuit Judge.   Steven P. McDonald filed for individual Chapter 7 bankruptcy in late 2015.   As part of those proceedings, the United States Trustee filed a complaint seeking denial of McDonald's discharge of his debts.   The Trustee argued that 11 U.S.C. § 727(a)(5) prevented discharge of those debts because McDonald had failed to satisfactorily explain the dissipation of many of his assets.   The bankruptcy court agreed and granted summary judgment to the Trustee in part.   The district court affirmed the bankruptcy court's decision.   We affirm as well.

**I.**

McDonald was a career banker.   He worked as a bank examiner for the State of Ohio and a loan officer for a local bank in Portage, Ohio.   As relevant here, between May 2008 and June 2013, McDonald was a loan officer and vice president for Hometown Bank, f.k.a. Home Savings of Kent (Hometown).   Part of his duties included issuing commercial loans on Hometown's behalf.

One of McDonald's customers at Hometown was Patrick Lally.   McDonald oversaw multiple commercial loans extended by Hometown to Lally.   But on February 23, 2010, McDonald and his wife entered a *private*—not commercial—loan arrangement with Lally (the Lally Loan).   Lally loaned the McDonalds $165,000, to be repaid over ten years at ten percent interest per year.   McDonald deposited this $165,000 into the couple's joint checking account at PNC Bank on February 25.   Hometown was unaware of the Lally Loan, and the Lally Loan was against Hometown's policies.

After McDonald declared bankruptcy, the Trustee audited McDonald's financial activity during the time of the Lally Loan arrangement.   The audit revealed that, during March and April 2010, McDonald drew fifteen personal checks of at least $1,500 each out of the checking account; some of these checks were for amounts as high as $20,000.   But McDonald produced only three of those checks to investigators.   He also withdrew almost $20,000 in cash from the

checking account and transferred $90,000 to his personal brokerage account during that time. He did transfer some of the money from his brokerage account back to the checking account, but by July 2010, the brokerage account had lost almost $24,000.

The McDonalds made "a handful of payments" to Lally before defaulting. During later litigation between Lally and Hometown, Lally assigned the Lally Loan promissory note to Hometown as part of a settlement. McDonald has made no further payments to Hometown to satisfy the Lally Loan.

McDonald had mostly depleted the funds from the Lally Loan by January 2011, and his brokerage account had no money left in it. So McDonald, still working for Hometown, hatched a scheme to fraudulently give himself a $225,000 line of credit from Hometown in the name of Richard Loftin, another Hometown customer (the Loftin Line). McDonald prepared a loan application and executed loan documents, including a promissory note, in Loftin's name. Loftin was unaware of McDonald's actions and did not consent to them; he only signed the Loftin Line documents after McDonald concealed them in other, legitimate loan documents and took them to Loftin's house. McDonald controlled the funds from the Loftin Line. Loftin never received any benefit from it.

McDonald enlisted another Hometown customer, Jim Mehallis, in this scheme. Mehallis was a bookie of sorts for McDonald, and McDonald owed him more than $30,000. To repay Mehallis, McDonald arranged for a check drawn on the Loftin Line for $158,651 to be sent to Mehallis. Two days later, Mehallis wrote a $128,000 check to McDonald. McDonald deposited that check into his checking account. Mehallis wrote other checks to McDonald during the scheme, enabling McDonald to receive funds from the Loftin Line without money going directly from Hometown to McDonald.

McDonald also used the Loftin Line to pay his personal debts. McDonald issued payments of $25,635.75 to a collection agency, $14,410 to an individual to whom he owed a gambling debt, $15,266.26 for credit card debts, $4,280 for mortgage payments, and $1,420 for auto loans. These transactions totaled more than $61,000.

In early February 2011, McDonald wired $100,000 from his checking account to his personal brokerage account. By June, only $200.93 remained in that account—a loss of more than $99,000 in only four months. McDonald did not explain what happened to that sum or to another $28,000 check he received from Mehallis in January 2011. Over time, McDonald made payments of $64,348.32 on the Loftin Line. When he stopped making payments, the unpaid balance was $166,651.68.

On November 1, 2015, McDonald filed a voluntary Chapter 7 petition, beginning this case. Bankruptcy Rule 2004 allows a court to order the examination of any party to a bankruptcy case. Fed. R. Bankr. P. 2004. The bankruptcy court held such an exam on June 1, 2016. McDonald produced bank statements, brokerage-account statements, cancelled checks, and his tax returns for 2012 through 2015. He did not produce his 2010 or 2011 tax returns, bank account records covering January 2010 through March 2010, or many canceled checks, which the court requested. In total, more than $250,000 of McDonald's assets was unaccounted for. The Trustee's arguments focused on around $175,000 of those assets.

At the Rule 2004 Exam, McDonald refused to testify about the Loftin Line, exercising his Fifth Amendment right against self-incrimination. But he later confessed to creating the scheme and to the fact that Loftin was uninvolved and unaware that he was signing documents related to the fraudulent line of credit. When asked at the Rule 2004 Exam about the $100,000 transfer from his checking account to his brokerage account, McDonald pleaded the Fifth again. But evidence later showed, and McDonald has since admitted, that the source of the $100,000 was the Loftin Line.

Faced with the above facts, the Trustee filed a complaint seeking denial of McDonald's discharge of his debts. The Trustee argued that McDonald knowingly and fraudulently made false statements about his assets, in violation of 11 U.S.C. § 727(a)(4)(A), and that McDonald failed to satisfactorily explain the whereabouts of certain cash assets, in violation of 11 U.S.C. § 727(a)(5).

Sections 727(a)(4)(A) and 727(a)(5) are exceptions to the general rule that the bankruptcy court will grant a discharge of the debtor's debts. Section 727(a)(4)(A) prevents discharge when

the debtor knowingly and fraudulently makes false statements. 11 U.S.C. § 727(a)(4)(A). And § 727(a)(5) prevents discharge when "the debtor has failed to explain satisfactorily . . . any loss of assets or deficiency of assets to meet the debtor's liabilities." 11 U.S.C. § 727(a)(5).

The bankruptcy proceedings focused on the Lally Loan and the Loftin Line. The bankruptcy court denied summary judgment on the Trustee's § 727(a)(4)(A) claim, *McDermott v. McDonald (In re McDonald)*, 614 B.R. 801 (Bankr. N.D. Ohio 2020), reasoning that McDonald's reliance on his gambling addiction left "room for plausible inferences of honest intent." Unlike § 727(a)(4)(A), however, § 727(a)(5) does not contain a wrongful-intent element. So the bankruptcy court held that the Trustee had shown beyond dispute that a denial of discharge was appropriate.

The bankruptcy court then found that McDonald failed to address more than $76,000 of the Lally Loan and around $128,000 of the Loftin Line, more than two-thirds of the total proceeds from the two transactions. This, the bankruptcy court reasoned, was another ground that discharge would be inappropriate under § 727(a)(5). It explained that "[r]egardless of the propriety of entering into self-dealing loan agreements or opening a line of credit under another person's name in pursuit of paying off gambling debts, it is the Debtor's unacceptably vague accounting for the missing cash provided . . . over the course of this case and adversary proceeding that is not legally satisfactory under Section 727(a)(5) and results in the denial of discharge." 614 B.R. at 818.

McDonald appealed the bankruptcy court's grant of summary judgment. The district court affirmed, noting that under § 727(a)(5), McDonald's explanation and evidence "must be sufficient to eliminate the need for the court to speculate as to what happened to all the assets." *Vara v. McDonald*, 631 B.R. 713, 719 (N.D. Ohio 2021). It also rejected McDonald's contention that his dissipation of the assets from the Lally Loan and the Loftin Line was too far removed to be considered as part of his discharge motion. The district court explained that, without proper accounting and given McDonald's "vague and indefinite statements[,]" there was no way to know whether McDonald was spending the money from the funds in question up to the date of his original petition. *Id*. at 721. This timely appeal followed.

**II.**

When considering appeals from the district court that originated in bankruptcy court, any deference we would give to a district court judgment is instead given to the judgment of the bankruptcy court. *Poss v. Morris (In re Morris)*, 260 F.3d 654, 662 (6th Cir. 2001); *Hancock v. McDermott*, 646 F.3d 356, 359 n.1 (6th Cir. 2011). We review the bankruptcy court's findings of fact for clear error and its conclusions of law de novo. *Keeney v. Smith (In re Keeney)*, 227 F.3d 679, 683 (6th Cir. 2000). The bankruptcy court's grant of summary judgment presents purely a question of law, so we review it de novo. *In re Morris*, 260 F.3d at 663.

In bankruptcy court, the standard for summary judgment is governed by Federal Rule of Bankruptcy Procedure 7056, which incorporates Federal Rule of Civil Procedure 56. Under Rule 56, summary judgment can be granted only when there is "no genuine issue of material fact" such that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). We view all evidence in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "The movant has the burden of showing that there is no genuine issue of fact, but the [non-movant] is not thereby relieved of his own burden of producing" evidence showing a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). We construe the Bankruptcy Code liberally in favor of the debtor. *In re Keeney*, 227 F.3d at 683.

As noted above, the Trustee moved for summary judgment, arguing that McDonald failed to satisfactorily explain the deficiencies in his assets in violation of 11 U.S.C. § 727(a)(5). A violation of § 727(a)(5) must be proven by a preponderance of the evidence. *See Barclays/Am. Bus. Credit, Inc. v. Adams (In re Adams)*, 31 F.3d 389, 394 (6th Cir. 1994). To make this standard workable, bankruptcy courts have largely implemented a burden-shifting framework for § 727(a)(5) cases. Under this framework, the party objecting to the discharge must first identify assets that the debtor owned at one time and subsequently claims to no longer possess. *See, e.g.*, *Strzesynski v. Devaul (In re Devaul)*, 318 B.R. 824, 840 (Bankr. N.D. Ohio 2004); *see also PNC Bank v. Buzzelli (In re Buzzelli)*, 246 B.R. 75, 116 (Bankr. W.D. Pa. 2000). If the objecting party satisfies this burden, the burden shifts to the debtor to offer a satisfactory explanation for the loss of the identified assets. *Id.*

As the moving party, then, the Trustee had the initial burden of proving "substantial and identifiable assets that the debtor owned at a time not too far removed from the bankruptcy that are no longer available for creditors." *In re Devaul*, 318 B.R. at 839. McDonald claims, as he did before both the bankruptcy court and the district court, that the Lally Loan and the Loftin Line are too remote in time from when his petition was filed, excusing any lack of a satisfactory explanation for his loss of those funds. This claim has little support.

First, contrary to McDonald's contentions, § 727(a)(5) has no lookback period. *See* § 727(a)(5). Presumably, had Congress wanted such a lookback period to be specified, it would have included such a period in the statute—as it did in other sections of the same statute. *See* § 727(a)(2) (one year lookback period for assets concealed before the petition's filing); *see also Hawley v. Cement Indus., Inc. (In re Hawley)*, 51 F.3d 246, 248 n.1 (11th Cir. 1995) (noting that § 727(a)(5) does not support a specific lookback period). Other courts have noted that "a focus on the two years prior to the debtor's petition filing may be common[.]" *Shamshovich v. Racer (In re Racer)*, 580 B.R. 45, 55 (Bankr. E.D.N.Y. 2018). But such a period is rarely fixed, and for good reason. Indeed, "[t]he existence of lost assets of substantial value relative to debtors' liabilities often warrants the extension of such two-year period." *Id.* (quoting *Crocker v. Stiff (In re Stiff)*, 512 B.R. 893, 898 (Bankr. E.D. Ky. 2014)); *see also In re D'Agnese*, 86 F.3d 732 (7th Cir. 1996) (permitting a lookback of nine years prepetition). Here, both the Lally Loan and the Loftin Line make up crucial portions of McDonald's unexplained losses. Those funds cannot be too far removed for the bankruptcy process to consider. Indeed, they go to the heart of the proceeding.[1]

McDonald next argues that he has satisfactorily explained his loss of the funds from the Lally Loan and the Loftin Line. At its core, a satisfactory explanation must contain more than vague guesses and conclusory statements. *Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616,

---

[1]McDonald argued to the district court that the bankruptcy court did not construe the evidence in the light most favorable to him; he recasts the same argument here. As the district court noted, this argument has no merit. *See* 631 B.R. at 720 n.5. McDonald cherrypicks lines from the bankruptcy court's decision to try to fashion evidence for this claim, but he cannot avoid the fact that he has no evidence showing when or how most of the funds in question were exhausted. He argues that "[s]ummary judgment should never be granted on a mere possibility." But it was not. His refusal to come forward in good faith to explain where the money went does not create a genuine issue of material fact on this point. *In re McDonald,* 614 B.R. at 816.

619 (11th Cir. 1984); *see also Baum v. Earl Millikin, Inc. (In re Baum)*, 359 F.2d 811, 814 (7th Cir. 1966) (holding that a satisfactory explanation "must consist of more than the vague, indefinite and uncorroborated hodgepodge of financial transactions"). Since § 727(a)(5) contains no intent requirement, it "imposes strict liability" when the debtor fails to provide a satisfactory explanation for the deficiency in assets. *Baker v. Reed (In re Reed)*, 310 B.R. 363, 368 (Bankr. N.D. Ohio 2004).

McDonald has not met this burden. A threadbare recitation from memory of what McDonald claims to recall is not enough. His testimony throughout the bankruptcy proceedings was rife with unclear, uncertain statements often couched with "likely," "I think," or "I don't know." And he has offered little evidence to back up his words. He failed to provide the bankruptcy court with explanations for, or copies of, more than $75,000 in personal checks drawn from the proceeds of the Lally Loan and the Loftin Line. Instead, he said that he "did not fully remember" what happened to the check he received from Mehallis, only that it "likely" went into his brokerage account. He has no explanation for a near-total loss of almost $100,000 which he has, without corroboration, blamed on his gambling and day-trading.

McDonald is a sophisticated actor. *Cf. Miller v. Bauer (In re Bauer)*, 128 F. App'x 467 (6th Cir. 2005). He has significant financial experience, which he used to commit fraud. Simply stating that he lost the money does not suffice. And his experience makes his lack of explanation even less convincing. We cannot say that his vague, evasive explanations were enough to satisfy the requirements of § 727(a)(5).

**III.**

The Trustee met its burden in identifying a deficiency in McDonald's assets. These assets were not too far removed from McDonald's petition for the bankruptcy court to have considered them. And McDonald did not offer a satisfactory explanation for what happened to a large portion of the funds in question. For these reasons, we affirm.