IN RE: Elijah Michael SCOTT, Debtor.

**Michael DeWine, Ohio Attorney General, Plaintiff,**

v.

**Elijah Michael Scott, Defendant.**

**Case No. 15–17259
Adversary Proceeding No. 16–1051**

United States Bankruptcy Court, N.D. Ohio, Eastern Division.

Filed February 24, 2017

Alison L. Archer, Ohio Attorney General, Trish D. Lazich, Ohio Attorney General's Office, Cleveland, OH, Victoria D. Garry, Cincinnati, OH, Todd R. Marti, State Office Tower, Columbus, OH, Plaintiff.

Elijah Michael Scott, Cleveland, OH, pro se.

## MEMORANDUM OF OPINION

Pat E. Morgenstern–Clarren, United States Bankruptcy Judge

The debtor Elijah Scott operated two community (or charter) schools in Cleveland, Ohio. At the end of the day, the Ohio Auditor found that the debtor had mishandled significantly more than $1 million in public funds that were entrusted to him for use in the schools for the benefit of Ohio's children, together with other transgressions. Michael DeWine, the Ohio Attorney General, filed an amended complaint against the debtor asking for a money judgment, objecting to discharge of the debt allegedly owed to Ohio, and also requesting that the debtor be denied a general discharge. As background to support his position, the Attorney General argues that Ohio's community schools account for a disproportionate level of abuse of public school funds, and a signal should

be sent to them that this abuse will not be tolerated.[1]

The Attorney General now moves for partial summary judgment.[2] The debtor did not oppose the motion.[3] For the reasons stated below, the motion is granted in part.[4]

## I. JURISDICTION

Jurisdiction exists under 28 U.S.C. § 1334 and General Order No. 2012–7 entered by the United States District Court for the Northern District of Ohio on April 4, 2012. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (I), (J) and (O), and it is within the Court's constitutional authority as analyzed by the United States Supreme Court in *Stern v. Marshall*, 564 U.S. 462, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011) and its progeny.

## II. SUMMARY JUDGMENT

Summary judgment is appropriate when the moving party shows there is no genuine dispute as to any material fact and that he is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a) (made applicable by FED. R. BANKR. P. 7056). In evaluating the evidence, all facts together with any inferences that may be drawn from those facts are viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). To avoid summary judgment, the non-moving party is required to present sufficient evidence to create a genuine issue of material fact. FED. R. CIV. P. 56(c);

*Poss v. Morris (In re Morris)*, 260 F.3d 654, *665* (6th Cir. 2001). Summary judgment should not be granted in favor of a movant merely because the adverse party does not respond to the motion. Instead, the court must examine the motion to determine whether the movant has met his initial burden and is entitled to judgment as a matter of law. *Yeschick v. Mineta*, 675 F.3d 622, 632 (6th Cir. 2012); *Cacevic v. City of Hazel Park*, 226 F.3d 483, 491 (6th Cir. 2000).

## III. FACTS

These undisputed facts are drawn from the evidence offered by the Attorney General, the debtor's admissions in his answer and through discovery, and the parties' joint pretrial statement.

Ohio Revised Code Chapter 3314 governs the formation and operation of community schools, known more commonly as charter schools. Community schools, together with traditional school districts and vocational schools, are public schools.

Community schools receive funds from two sources: state and federal. With respect to the former, Ohio annually appropriates funds for all of its public schools, including community schools. On the federal side, the United States Department of Education makes grants to the Ohio Department of Education and that department makes subgrants to individual community schools.[5]

While community schools share in funds allocated by the state, and in a sense take funds away from traditional schools, they

---

1. Motion for Partial Summary Judgment at 27, docket 24.

2. Of the five claims made in the amended complaint, the motion addressed four. Hence the motion is titled as one for partial summary judgment. The Attorney General later dismissed the fifth claim. *See* docket 25.

3. At the debtor's request, the Court extended his deadline for opposing the motion to January 23, 2017. *See* docket 19.

4. Docket 24.

5. Joint pretrial statement, docket 7.

are not bound by the same laws that govern those schools. Ohio Revised Code § 3314.04 provides that a community school is exempt from all state laws and rules applicable to schools, school districts, and boards of education, with certain exceptions. As one example, a school principal is required to be licensed by the state, while a community school principal is not required to have such a license. Community schools are, however, subject to the same requirements as traditional schools with respect to financial records, public records, open meetings, and audits by the Ohio auditor. *See* OHIO REV. CODE § 3314.03(A)(8) and (A)(11)(d).

The debtor Elijah Scott founded and operated two community schools in Cleveland, Ohio: Greater Achievement Community School and Elite Academy of the Arts. He holds a Ph.D. and at one time held an Ohio school principal's license.[6] The debtor operated these schools through Greater Educational Services, a company he founded, owned, and operated. He served as superintendent of both Greater Achievement and Elite. The students in his schools came from the catchment area for the Cleveland Metropolitan School District, and the vast majority of them fell within the definition of economically disadvantaged.[7]

Greater Achievement, which opened during the 2002–2003 school year, received an "academic emergency" rating from the 2003–2004 through the 2008–2009 school years, with its state proficiency test scores averaging 49% lower than those of the Cleveland Metropolitan School District. Greater Achievement closed by operation of law in 2010 due to poor student performance. Elite, which opened in the 2006–2007 school year, similarly failed its students, receiving an academic emergency rating in the 2008–2009, 2010–2011, and 2011–2012 school years, with its state proficiency test scores averaging 14.5% lower than those of the Cleveland Metropolitan School District.[8] Elite closed at the end of the 2011–2012 school year.

The Ohio Auditor conducted audits of Greater Achievement covering fiscal years 2003 through 2010, and of Elite covering fiscal years 2007 through 2012.[9] The audit reports set out findings for recovery against the debtor and other individuals associated with the schools for their mishandling of the public funds that were given to the schools as operating funds and federal grants. The reports included findings that the debtor had diverted public funds for private gain (including withdrawing cash from ATMs and using Greater Achievement bank accounts to pay for vid-

---

**6.** Some of these facts are from an administrative proceeding involving the debtor in which he applied to renew his one year license as an alternative principal. In 2013, after taking evidence, a hearing officer of the Ohio State Board of Education issued a report and recommendation to deny the application. The Board adopted that recommendation. *See* Exhs., docket 24–1 at 190–228. (Licensure Decision). Because the Board determined those facts while acting in a judicial capacity, they would be entitled to preclusive effect under state law and they are given preclusive effect here. *See Pingle v. Richmond Heights Local School Dist. Bd. of Educ.*, 2015 WL 6501449 at *5 (N.D. Ohio Oct. 27, 2015)

(discussing *Nelson v. Jefferson Cnty., Kentucky*, 863 F.2d 18 (6th Cir. 1988)).

**7.** Joint pretrial statement, docket 7.

**8.** *See* Exhs., docket 24–1 at 85–138.

**9.** The Attorney General attached copies of the certified audit reports to the amended complaint as Exhibit 2–1 through Exhibit 2–7, and they will be referenced in that fashion in this opinion. The affidavit of Jerry Riffe, Assistant Deputy Director of Special Audits, Ohio Auditor of State, a custodian of the reports, is also an exhibit to the motion. *See* Exhibits, docket 24–1 at 81–2.

eos, purchases for animals, dry cleaning, utilities, entertainment, travel, parking, and lodging, and paying companies related to the debtor), failed to file reports required by law, failed to establish and maintain required accounting standards, failed to segregate and account for federal funds, and similar misdeeds.

The Attorney General filed a state court lawsuit to reduce the findings to a judgment, but the lawsuit was stayed as to the debtor on December 23, 2015 when the debtor filed this bankruptcy case.

## IV. THE MOTION

The Attorney General asks for three kinds of relief: a monetary judgment based on the audit findings, a determination that the debtor is not entitled to a general discharge under Bankruptcy Code § 727(a)(3), and a determination under Bankruptcy Code § 523(a)(8) that even if the debtor receives a general discharge, his debt to Ohio will survive the bankruptcy.

### A. Monetary Judgment

#### 1.

 Ohio law authorizes the auditor to issue a "finding for recovery" in an audit report when the auditor determines that legal action may be appropriate to recover public money or property. OHIO REV. CODE § 117.28. The Attorney General is authorized to prosecute an action to recover the money or property. *Id.* In such an action, a certified copy of an audit report containing factual information serves as "prima facie evidence in determining the truth of the allegations[.]" OHIO REV. CODE § 117.36; see *State, ex rel. Ministerial Day Care*

*Assoc. v. Montgomery*, 100 Ohio St.3d 343, 800 N.E.2d 18, 20 (2003) (noting that an audit report constitutes prima facie evidence in a § 117.28 action, which evidence unless rebutted is sufficient to support a conclusion in favor of the plaintiff).

The certified audit reports offered by the Attorney General into evidence include findings for recovery stating that the debtor is liable for specific amounts for public monies that the debtor illegally expended in connection with his activities at the schools. Those findings constitute prima facie evidence of the debtor's liability under Ohio Revised Code § 117.36. Because the debtor did not present any evidence to rebut the presumption, there is no issue of material fact as to the debtor's liability or the amount of his liability. As a result, the Attorney General is entitled to a summary judgment for the total amount of the findings for recovery issued against the debtor.

The Attorney General's request for a $1,228,660.00 judgment must, however, be adjusted because it includes duplicate amounts. He calculated his request based on two tables included in the motion: Table 3 which lists findings for recovery against the debtor totaling $585,913.00 and Table 4 which lists findings for recovery totaling $642,747.00. However, the two tables include these duplicate entries: Greater Achievement Finding No. 2003–004 ($28,875.00), No. 2010–008 ($1,000.00), and No. 2010–010 ($3,558.00). Subtracting the duplicate amounts, the Court finds that the debtor is liable in the amount of $1,195,227.00 based on these audit findings for recovery:[10]

---

**10.** *See* Exhs. 2–1 to 2–7.

| Greater Achievement Finding No. | Amount | Elite Finding No. | Amount |
|---|---|---|---|
| 2003-001 | $453,593.00 | 2007-001 | $510.00 |
| 2003-002 | $88,100.00 | 2009-001 | $1,000.00 |
| 2003-003 | $45,512.00 | 2009-002 | $511.00 |
| 2003-004 | $28,875.00 | 2009-004 | $240.00 |
| 2010-001 | $12,500.00 | 2010-001 | $1,716.00 |
| 2010-002 | $73,214.00 | | |
| 2010-003 | $228,652.00 | | |
| 2010-005 | $2,089.00 | | |
| 2010-006 | $125,620.00 | | |
| 2010-007 | $116,750.00 | | |
| 2010-008 | $1,000.00 | | |
| 2010-009 | $1,000.00 | | |
| 2010-010 | $3,558.00 | | |
| 2010-011 | $10,787.00 | | |

The Attorney General is, therefore, entitled to a judgment in the amount of $1,195,227.00.

### 2.

Next, the Attorney General moves for judgment in the additional amount of $779,982.00 contending that the debtor is liable under the theory of strict liability for other misapplications and misuses of funds that occurred while he was a public official of the community schools.

It is "firmly entrenched" under Ohio law that public officials are liable for the public funds they control. *Cordray v. Int'l Preparatory Sch.*, 128 Ohio St.3d 50, 941 N.E.2d 1170, 1173 (2010). The liability is strict, meaning they are held liable for the loss of public funds "even though illegal or otherwise blameworthy acts on their part were not the proximate cause of the loss of public funds." *Id.* (citation and quotation marks omitted). Ohio Revised Code § 9.39 codifies the common law on this issue, providing in relevant part that: "All public officials are liable for all public money received or collected by them or by their subordinates under color of office."

Ohio Rev. Code § 9.39. As the Attorney General correctly notes, a community school comes within the definition of "public office," and an officer, employee, or duly authorized representative of a community school comes within the definition of a public official. *Cordray*, 941 N.E.2d at 1174; Ohio Rev. Code § 9.38 and § 117.01. Also, public money received under the community school funding scheme is money collected or received under color of office. *Id.*

The question of whether the Attorney General is entitled to a judgment against the debtor based on strict liability raises two issues. First, did the debtor receive or collect funds under "color of office," and second, do the audit findings establish an additional amount for which the debtor is liable.

The phrase "color of office" is defined to mean "actually, purportedly, or allegedly done under any law, ordinance, resolution, order, or other pretension to official right, power, or authority." Ohio Rev. Code § 117.01(A) (made applicable by Ohio Rev. Code § 9.38(1)). The Ohio Supreme Court has held that this is a factual issue, the

answer to which depends both on the formal position held by the public officer and also that individual's responsibilities. *Cordray*, 941 N.E.2d at 1174–75. In *Cordray*, the Ohio Supreme Court remanded the case to the lower court to determine whether an individual's responsibilities at a school "included the receipt or collection of public money, or whether she supervised employees who received or collected public money under color of office." *Id.* On remand, the trial court found that the individual, who had the ability to supervise the bank accounts used to receive the school's public funding and had signatory authority on the accounts, received and collected funds within the meaning of § 9.39. *Ohio Attorney Gen. v. Int'l Preparatory Sch.*, 2012 WL 668034 (Cuyahoga County Common Pleas Court Feb. 10, 2012).

■ In this case, the Attorney General's evidence establishes that the debtor was an employee and superintendent of the two schools with signature authority over the bank accounts that received the schools' operating funds, and that he wrote checks and made transfers from the accounts.[11] Based on that evidence,[12] the Attorney General met his burden of showing that the debtor received and collected the schools' funding under color of office.

The second issue is whether the evidence establishes any loss of public funds for which the debtor is strictly liable. The Attorney General relies here on audit findings set out in his Table 5.[13] Those findings are best described as falling into two groups: one group consists of findings for recovery against individuals other than the debtor, specifically Marilyn Smith–Gore, Treasurer of Greater Achievement;[14] Rena Woods, Assistant Treasurer of Greater Achievement;[15] and David Schneider, Treasurer of Elite.[16] These findings for recovery are prima facie evidence of the illegal expenditure of school funds in the amount of $75,552.00. *See* OHIO REV. CODE § 117.36. Because the debtor collected and received those funds under color of his office, he is strictly liable for the loss of those funds.

The Attorney General also argues that the debtor is strictly liable for amounts based on additional audit findings; these remaining findings are not, however, findings for recovery. They instead (1) discuss payments made with school funds for which there was no supporting documentation, discuss the condition of the school's records, or make recommendations;[17] and

---

11. Debtor's admissions 1–5. *See* Exhs., docket 24–1 at 139 and 150–52. When a party fails to respond to requests for admission, those matters are deemed admitted. That is what happened here when the debtor failed to respond to the Attorney General's request for admissions. *See* FED. R. CIV. P. 36(a)(3) and (b)(made applicable by Fed. R. Bankr. P. 7036).

12. Answer at ¶ 35 and ¶ 45, docket 6; and Licensure Decision at 207.

13. The Attorney General acknowledges that summary judgment is not appropriate as to these findings which are included in the table: Greater Achievement Finding No. 2010–005; No. 2010–012; and No. 2010–013.

14. Greater Achievement Finding No. 2003–005 (making a finding for recovery as to Mari-

lyn Smith–Gore, Treasurer, in the amount of $9,571.00). (Exh. 2–1).

15. Greater Achievement Finding No. 2003–006 and No. 2003–007 (making findings for recovery as to Rena Woods, Assistant Treasurer in the total amount of $48,031.00). (Exh. 2–1).

16. Elite Finding No. 2010–002, No. 2011–001, and No. 2012–001 (making findings for recovery as to David Schneider, Treasurer, in the total amount of $17,950.00). (Exhs. 2–5, 2–6 and 2–7).

17. *See for example,* Greater Achievement Finding No. 2003–009, finding examples of vendor payments made from the "Academy" for which the "Academy" failed to maintain original documentation and recommending

(2) state that matters will be referred to the Ohio Ethics Commission.[18] These findings do not determine liability for the loss of public funds, which is a prerequisite to holding the debtor accountable under the strict liability theory. The Attorney General is not entitled to summary judgment as to those amounts.

The Attorney General's request for a judgment as to the additional amounts is, therefore, granted in the amount of $75,552.00.

### B. 11 U.S.C. § 727(a)(3)

■ An individual chapter 7 debtor is generally entitled to a discharge of most of his debt, but there are exceptions. Here, the Attorney General relies on the exception set out in Bankruptcy Code § 727(a)(3) which denies a discharge to a debtor who "failed to keep or preserve any recorded information, including books, documents, records, and papers, from which ... [his] financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all the circumstances of the case[.]" 11 U.S.C. § 727(a)(3). The purpose of this provision "is to require a debtor to produce sufficient records so that creditors are not required to risk the concealment of assets under the guise of chaotic or incomplete records." *Noland v. Johnson (In re Johnson).*, 387 B.R. 728, 736 (Bankr. S.D. Ohio 2008).

■ A plaintiff must prove his objection to discharge by a preponderance of the evidence. FED. R. BANKR. P. 4005; *Barclays/Am. Bus. Credit, Inc. v. Adams (In re Adams)*, 31 F.3d 389, 393–94 (6th Cir. 1994). The burden of production, though, shifts. A plaintiff must first show that the debtor failed to keep adequate records, at which point the burden shifts to the debtor to explain why the failure is justified. *Turoczy Bonding Co. v. Strbac (In re Strbac)*, 235 B.R. 880, 882–83 (6th Cir. BAP 1999); *CM Temp. Servs., Inc. v. Bailey (In re Bailey)*, 375 B.R. 410, 415–16 (Bankr. S.D. Ohio 2007). The plaintiff retains the ultimate burden of proof.

■ The adequacy of a debtor's records is determined on a case-by-case basis. *Dolin v. Northern Petrochemical Co. (In re Dolin)*, 799 F.2d 251, 253 (6th Cir. 1986). A debtor is required "to provide creditors with enough information to ascertain the debtor's financial condition and track his financial dealings with substantial completeness and accuracy for a reasonable period past to present." *Strbac*, 235 B.R. at 882 (quotation marks and citation deleted). As *Strbac* noted, "The bankruptcy code does not impose upon ... creditors the obligation to take the Debtor's word that his income was insubstantial. Creditors are entitled to see it for themselves from contemporaneous, accurate and reliable records that the Debtor is required to maintain and produce." *Id.* at 885.

■ In deciding if a debtor's records are adequate, courts consider, among other things, the debtor's sophistication, education, business experience, financial structure, and occupation. *Id.* at 882. The adequacy of a debtor's records "should be measured 'against the type of books and records kept by a reasonably prudent debtor with the same occupation, financial structure, education, and experience.'" *Ayers v. Babb (In re Babb)*, 358 B.R. 343, 354

---

that the school maintain "correct, complete, and accurate" financial records. (Exh. 2–1).

18. *See for example,* Elite Finding No. 2012–003, noting a public official is prohibited from having an interest in a public contract, that debtor as Superintendent/Developer of Elite was also the owner of the management company with which the school had contracted that year, and stating that the matter would be referred. (Exh. 2–7).

(Bankr. E.D. Tenn. 2006) (quoting *Wazeter v. Mich. Nat'l Bank (In re Wazeter)*, 209 B.R. 222, 227 (W.D. Mich. 1997)).

■ The Attorney General's evidence establishes that the debtor is an educated business man: he holds a Ph.D. and he founded the two community schools. He also owned Greater Educational Service Center, a management company that received substantial payments from the schools.[19] Additionally, he served as principal of both schools and exercised control over the bank accounts that received the operating funds during the relevant period.[20] As previously discussed, the debtor illegally expended school funds in excess of a million dollars related to Greater Achievement as detailed in the audit findings for recovery against him.[21] And he failed to produce any records at all related to his work and dealings with Greater Achievement, the audit findings, or whether there was an applicable bond or insurance coverage when asked to do so by the Attorney General in his request for production of documents.[22] This evidence meets the Attorney General's burden of going forward and shifted the burden to the debtor to explain why his failure to keep records was justified. The debtor failed to present any evidence in opposition to the motion.

Based on the evidence, the Attorney General proved that the debtor failed to keep adequate financial records regarding his business transactions with Greater Achievement given his education, business experience, and extensive business dealings regarding the school. The debtor failed to provide any explanation for why this failure was justified under the circumstances. As a result, the Attorney General is entitled to a summary judgment denying the debtor a discharge under § 727(a)(3).

### C. 11 U.S.C. § 523(a)(8)

■ The Bankruptcy Code provides two major exceptions to a debtor obtaining relief from his debts: the debtor may be denied a discharge of all of his debts (as found above under § 727) or the Court may find that a debtor will not be discharged from a specific debt (under § 523) even though the balance of debt is discharged. Here, the Attorney General asks that the debtor both be denied a discharge of all debts and also specifically be denied a discharge for the debt owed to the State. The Attorney General relies on § 523(a)(8)(A)(ii) which excepts from discharge any debt for "an obligation to repay funds received as an educational benefit, scholarship, or stipend[.]" He argues that a ruling under this section would be broadly applicable to all individuals who receive these funds for community schools and that it would have two important consequences: it would protect funds by addressing the disproportionate level of abuse of community school funds compared to public school funds, and in so doing, would help protect vulnerable children.

The Court understands the policy argument made and empathizes with this situation where Ohio's children are deprived of school funding due to misuse of funds by community school operators. The *legal* argument, however, for whether the debt owed to Ohio is nondischargeable under this particular Bankruptcy Code section is

19. Exh. 2–4 at 38; Exh. 2–5 at 13; Exh. 2–6 at 13; and Exh. 2–7 at 13 and 20.

20. Licensure decision at 207; and Debtor's Admissions, Exhs. at docket 24–1 p. 151–52.

21. The parties stipulated that all the matters underlying the audit findings described in the amended complaint are "business transactions" within the meaning of § 727(a)(3). Joint pretrial statement, docket 7.

22. *See* Document Request, Exhs. at docket 24–1 p.150; and Affidavit of Todd Marti, Exhs. at docket 24–1 p.139.

not straightforward and the Court has not had the benefit of having the contrary position briefed by a party. Additionally, the Court notes that there is an effective remedy available that would have the same far-reaching effect: Because community schools are a creation of the Ohio legislature, that entity can certainly take the lead to protect Ohio's vulnerable children by adopting legislation that would provide better safeguards against misuse of public money by community school owners and operators. Under the circumstances, the Court finds that its ruling that the debtor will not receive a discharge of *any* of his debts makes this issue moot for purposes of this case.

## V. CONCLUSION

For the reasons stated, the plaintiff's motion for summary judgment is granted in part. The plaintiff is entitled to a judgment in the amount of $1,270,779.00 and the debtor is denied a discharge of his debts under Bankruptcy Code § 727(a)(3). The Court will enter a separate judgment in accordance with this decision.